# Munden *v.* Bailey.

*Bill in Equity by Administrator, for Settlement of Accounts.*

1. *Diligence required of administrator.*—While an administrator is not an insurer, and is not expected to be infallible, diligence and fidelity are exacted of him, and he is liable for any loss resulting from his failure to exercise either.

2. *Relevancy of evidence as to unfriendliness of parties and witnesses.* Since enmity is supposed to bias a witness, or party testifying as a witness, proof of its existence is relevant and admissible; but it is not permissible to prove the cause of such enmity or unfriendliness, or the details of any particular quarrel.

3. *Refreshing memory of witness by memoranda.*—As to the use of books or memoranda by a witness, to aid or refresh his memory, the correct rule is stated in the case of *Acklen's Adm'r v. Hickman*, 63 Ala. 494.

4. *Register's finding on facts.*—In weighing the testimony adduced before him on a reference, the register is aided by the personal attendance of the witnesses during their examination before him; and his findings on controverted facts should not be disturbed, either by the chancellor or by this court, unless based on illegal evidence, or erroneous conclusions of law, or unless it is manifest that he erred in weighing the testimony.

5. *Interest, on statement of account between administrator and widow.* The intestate's widow having purchased most of the personal property at the administrator's sale, and afterwards advanced money, at his request, to the distributees, which was allowed as a credit on her debt, and charged against the distributees by the administrator; on the statement of the account between the administrator and the widow, if interest is allowed or charged on one side, it should also be on the other.

6. *Rent of lands after dower assigned.*—If the administrator rents out the lands of the estate, after the widow has taken possession of the lands allotted as her dower, the rents received by him belong only to the distributees or heirs, and should be accounted for in the settlement between them and the administrator, excluding the widow from any participation in them.

7. *Allowance of attorney's fees to administrator.*—When an administrator claims, on settlement of his accounts, a credit for attorney's fees paid for the benefit of the estate, and objection is made to the allowance of the credit, he must prove the services rendered, and their value, just as the attorney would be required to prove them in an action against the administrator; and if the account consists of more than one item, the several items should be set forth and proved.

8. *Same.*—An administrator may employ counsel, when necessary to

[Munden v. Bailey.]

protect and preserve the interests of the estate, or to enable him to pursue the proper line of conduct in the discharge of the delicate duties with which he is sometimes intrusted; and he may, as a rule, pay a reasonable retainer to counsel, to advise and aid him in the trust, graduated by the value of the estate, and by the character of the questions likely to come up for solution; but he is not entitled to a credit for counsel fees paid as compensation for services rendered in the investigation of a claim due the estate, and in the preparation made for bringing suit on it, when the suit was not in fact brought, the claim was lost, and he shows no good reason why he did not follow the advice of his attorney.

9.  *Liability for failure to collect notes.*—An administrator is chargeable with the amount due on a promissory note due to his intestate, which he failed to collect, when, by due diligence in bringing suit within a reasonable time, he might have collected the money; and when it is shown that the debtor was, for several years, in the open possession of a valuable plantation and personal property unincumbered, largely exceeding the amount due on the notes, and that another creditor collected his claims by suit during that time, the administrator can not relieve himself of liability for the failure to sue, by showing that the debtor was indebted to an amount greatly in excess of the value of his property, and that other resident creditors, prudent men, well acquainted with the condition of the debtor, also failed to sue, and lost their debts.

10.  *Contribution between co-sureties.*—As between co-sureties, equality is equity, and any security given by the principal, for the indemnity of one, enures equally to the benefit of the other: hence, where the principal transfers to one surety, for his indemnity, notes executed by the other surety, and such notes are paid, the payment enures to the equal exoneration of both sureties, and the balance of the debt is a common burden on both; but, the notes not being paid during the life of the surety to whom they were so transferred, and the distributees of his estate seeking to charge his administrator with negligence in failing to collect them, the latter is entitled to the benefit of any excess of partial payments made by the surviving surety over and above his share of the debt.

11.  *Supplies furnished to laborers, by administrator.*—Where extra supplies are furnished by an administrator, to the laborers employed in the cultivation of the plantation, and the amount so advanced is collected by him at the end of the year, being retained out of the laborers' share of the proceeds of the cotton crop, he is chargeable with the amount so collected, on settlement with the distributees.

12.  *Advancements by administrator, to or for infant distributees.*—In ordinary cases, an administrator can not claim a credit, on final settlement of his accounts, for moneys advanced by a third person, at his instance and request, to or for the infant distributees; but, where he has acted as guardian for them, at their request, and on their promise that he should be reimbursed on final settlement for all moneys expended for them, and they admit the request and promise, and declare their willingness to abide by it, he is entitled to such credit on settlement of his accounts in equity; and if he has not repaid the moneys so advanced for him, and is insolvent, any excess found due to him, on the statement of accounts between him and the distributees, may be ordered to be paid to the person by whom the advances were made.

13.  *Same.*—When an administrator makes advances to the infant distributees, in excess of their distributive share of the personal assets, he can not have the land sold for his reimbursement; but, if he made such advances while acting as their guardian, at their instance and request, and on their promise that he should be reimbursed on final settlement, and they recognize and admit the promise, he is entitled to relief in equity by virtue of the agreement; yet the liability of the distributees is several, not joint, and each is chargeable only with the excess of the advances made to him over and above his distributive share.

[Munden v. Bailey.]

14. *Services rendered for benefit of trust estate.*—When services have been rendered for the benefit of a trust estate, in the hands of an administrator or other trustee, and a bill in equity is filed for the settlement of the estate, the person who rendered such services may file a petition in the cause (Code, § 3748), and have his claim allowed out of the trust estate, to the extent of any balance due to the trustee, but no further.

15. *Same; when petition is allowable.*—When the trustee, at whose instance the services were rendered, is insolvent, a remedy by action at law, against the trust estate and the beneficiaries, is given to the person by whom the services were rendered (Code, § 3747); but he can not intervene by petition, in a pending suit for the settlement of the estate, between the trustee and the beneficiaries.

16. *Same; attorney's fees.*—Services rendered by the attorneys and solicitors for the administrator, in the suit instituted by him against the distributees, for a settlement of his accounts as administrator, and also as *quasi*-guardian under the agreement with the distributees, are not services rendered for the trust estate (Code, § 3747), and are not within the terms of the agreement; "still, to some extent, he has the right to have the expense charged on the trust fund in his hands, or on any balance of assets not disbursed, and a division of the burden should be so adjusted as to leave on the trust estate that proportion which shall represent the unjust claims asserted by the distributees, while the balance rests on the administrator personally."

APPEAL from the Chancery Court of Perry.

Heard before the Hon. CHARLES TURNER.

The original bill in this case was filed on the 6th November, 1876, by James F. Bailey, as administrator of the estate of Needham Munden, deceased, against the distributees of said estate, who were Mrs. Nancy B. Munden, his widow, and William P. and Walter C. Munden, his two sons; and sought a settlement of his accounts as administrator, and also as *quasi*-guardian for the two sons at their instance and request, and to enjoin proceedings in the Probate Court to compel a settlement. The complainant's letters of administration were granted on the 3d April, 1869, and he duly qualified, and gave bond, with Thomas B. Sprott and others as sureties. The decedent died on the 5th February, 1869, being possessed of a valuable plantation in said county, and of considerable personal property. The administrator took possession of the lands, and cultivated them, during the years 1869 and 1870, and with the proceeds of the crops, and other means, paid all the debts of the estate. In January, 1871, the widow's dower was set apart to her; and about the same time the personal property was sold, under orders of the Probate Court, and her share of the proceeds paid to her. At the time of the intestate's death, his two sons were of the ages of sixteen and thirteen years, respectively; and no guardian having been appointed for them, the administrator consented and agreed to act as guardian for them, at their special instance and request, as he alleged, and on their promise that he should be reimbursed, on final settlement of his accounts, for all moneys he might pay out in that capacity to or

[Munden v. Bailey.]

for them. The lands belonging to the estate, after the allot-
ment of the widow's dower, consisted of a tract containing
nearly five hundred acres, which were rented out by the admin-
istrator during the years 1871, 1872 and 1873, and the posses-
sion thereof was then delivered to William P. and Walter C., who
afterwards cultivated them. The bill alleged that the com-
plainant had exhausted all the personal assets in the payment
of debts, and in the support, maintenance and education of the
said William and Walter, and had used a large amount of his
own moneys in expenditures and disbursements for their bene-
fit; that he had rendered extra services as attorney for the ben-
efit of the estate, and in the management of the plantation,for
which he had never received any compensation; that the estate
was also indebted to him for the compensation of attorneys
whom he had employed to represent and protect the interests
of the estate, and owed several hundred dollars as fees and costs
of administration to the judge of probate. On the 29th May,
1875, a citation to the complainant was issued from the Probate
Court, requiring him to file his accounts and vouchers for a final
settlement of his administration; and having filed his accounts
and vouchers as required, on the 29th September, 1875, he then
filed his bill in this case, asking that the settlement might be re-
moved into equity, that his account might be there stated, and
that the land might be sold for the payment and satisfaction of
any balance found due him.

The chancellor sustained a demurrer to the bill, for want of
equity; but his decree was reversed by this court, on appeal,
during its December term, 1877, and the cause was remanded.
See the report of the case, in 58 Ala. 104. After the remand-
ment of the cause, answers were filed by each of the defendants;
and cross-bills were afterwards filed by them, bringing in as de-
fendants the sureties on the administrator's official bond, alleg-
ing his insolvency, and praying a decree against them for what-
ever balance might be found against him. Thomas B. Sprott,
one of the sureties, having died before the bill in this case was
filed, his administratrix was made a defendant to the cross-bills;
and she pleaded the statute of non-claim, alleging that more
than eighteen months had elapsed since the grant of adminis-
tration to her, and that the claim now asserted had never been
presented to her within the period prescribed by law. The
chancellor sustained the plea, and dismissed the cross-bills as
against her and Sprott's estate.

The administrator's accounts and vouchers having been filed
in the office of the register, pursuant to a decretal order of the
chancellor, numerous exceptions were filed to them by the dis-
tributees; and on the statement of the account by the special
register, the investigation being protracted at great length,

[Munden v. Bailey.]

many exceptions to his rulings and decisions were reserved by each party. The present appeal is sued out by the distributees, who here make thirty-five assignments of error, twenty-four of which are founded on the chancellor's rulings on exceptions to the register's report; but a statement of all these exceptions is not material to an understanding of the points decided by this court. The opinion states the material facts connected with the points decided.

JOHN F. VARY, for appellants.

W. L. BRAGG, and L. N. WALTHALL, *contra.*

STONE, J.—As we shall hereafter show, several errors were committed in the court below, which will cause a reversal of the decree rendered by the chancellor in this cause. A remandment will follow, and a re-statement of the account will become necessary. We shall, therefore, endeavor to give such directions, and to so declare the rules to be observed by the register, that he may, on another trial, so state the account that, if possible, the litigation between these parties, which has become very earnest, if not acrimonious, may be hastened to an adjustment. In doing so, we will not only consider and determine certain questions in which we think the chancellor erred to the prejudice of appellants, but we will also express our views on certain other rulings, in which we think error was committed to the injury of the appellee. As we said, we do this to hasten, if possible, the end of this disagreeable litigation, and to render unnecessary an appeal by the appellee to this court, to obtain a correction of the errors committed against him. We find further justification of this course in the fact, patent in the record, that an unusual length of time was consumed in taking the account, and very great expense must have attended it. This expense must fall heavily somewhere. It is the interest alike of parties and the public, that litigation be brought to an end, with as little delay and as light expense as possible.

What we may hereafter say, is not intended to affect the chancellor's ruling on the defense of non-claim, interposed by Sprott's administrator. No exception has been taken to that ruling, and no argument offered against it. It is not our intention to disturb it.—*Fretwell v. McLemore,* 52 Ala. 124.

1. The general measure of an administrator's duty is, that he must act in good faith, and bring to the service that degree of care and diligence which an ordinarily prudent man bestows on his own affairs of similar nature. He is not an insurer, and is not expected to be infallible. He must, however, be diligent

in conserving the interests of the estate.    Diligence and fidelity
are what the law exacts of him.    Failing in either of these, if
loss to the estate be the result, he must make it good.—*Lyon v.
Foscue*, 60 Ala. 468; *Gould v. Hayes*, 19 Ala. 438.    We do not
understand either party as controverting this legal principle.
In truth, earnest as the conduct of the present litigation is,
there is not much difference of opinion on legal questions.    The
contest is over the facts, and inferences to be drawn from the
testimony.

2.    Exceptions were taken to the introduction of some of the
testimony.    The details of an alleged quarrel between W. P.
Munden and Mrs. Nancy Munden were allowed to be given in
evidence, against the objection of the appellants.    This testi-
mony could shed no light on any question in issue, and should
not have been received.    Its only effect, if effect it had, was
to divert the mind of the register from the questions in issue
before him.    We do not deny the competency of evidence to
prove the state of feelings between these parties.    They repre-
sented interests somewhat antagonistic, and each testified as a
witness.    Enmity is supposed to bias a witness in giving his
testimony, and it is but right that it should be known to the
tribunal trying the issue, when it exists.    But, in such case, it
is allowable to prove only the fact of such enmity or unfriend-
liness.    The cause, merits, or details of the quarrel, can never
be material or pertinent—always tend to foist into the conten-
tion an immaterial issue, and should not be received.—*Mc-
Hugh v. The State*, 31 Ala. 317, and authorities cited; 2 Brick.
Dig. 549, §§ 124–6.

3.    Some books, or memoranda, were received in evidence
against objection, which were not brought within the rule.    We
refer specially to the book called a "Shipping Manifest," and to
the books of Woolsey & Sons.    To some extent, the same remark
may be made of the memorandum-book kept by Mrs. Munden.
In *Acklen v. Hickman*, 63 Ala. 494, we laid down the rule to
be observed, in reference to memoranda produced by a witness,
or shown to him, to aid his recollection.    See, also, *Jeffries v.
Castleman*, at last term.    As to the manifest, there was no
proof offered of its correctness.    It was wholly irrelevant and
illegal.    We must, then, consider the questions, as if the mani-
fest was not in evidence before the register.

4.    The register, in his investigations, had the witnesses
present before him.    That gave him advantages in weighing
the testimony, which neither the chancellor nor this court can
enjoy.    His findings on controverted facts should not be dis-
turbed, unless he based them on erroneous conclusions of law,
or illegal evidence, or unless it is manifest he erred in weigh-
ing the testimony.

[Munden v. Bailey.]

In the matter of the quantity of the corn made in 1870, and sold in 1871, we are far from being convinced he erred.   As to the cotton grown and accounted for in 1870, after excluding the " shipping manifest," there was no sufficient evidence to justify a greater charge against the administrator, than that shown by the accounts of sales returned by him.   If more cotton was made that year than he accounted for, it is not shown. Possibly, this proof can be supplied, through the employes of the commission-house, if in fact such excess of cotton was produced.   We think, also, some extra compensation should have been allowed the administrator, for superintending the plantation in the years 1869 and 1870; but we think the register placed it much too high.

5.   We have disposed of the questions, in which we think there was error to the prejudice of Bailey, and in favor of the estate proper.   The account between Bailey and Mrs. Munden, and, incidentally, the charges he makes against the younger Mundens, we confess we are not able fully to understand.   The sale-bill of personal property, sold in January, 1871, shows that Mrs. Munden was the chief purchaser.   She by her purchase became the owner of most of the personal property. This purchase made her debtor to the administrator, for the sum of her purchases.   The accounts show that she made many payments and advances for Bailey,—many of them to W. P. and W. C. Munden, the distributees.   To the extent she was thereby paying the debt she owed the administrator for property purchased, if she had not previously paid for it, this gave her no claim against the administrator, except to have proper credits entered on her indebtedness.   This would create a mutual account between her and Bailey ; and if interest is charged on one side of the account, it should be charged on the other.   This account would exert no influence on the administration account, further than to show so much assets received by Bailey, and the amount of disbursements made by Bailey, through Mrs. Munden, to W. P. and W. C. Munden, severally.   We suppose the items of account charged to Bailey, for advances made by Mrs. Munden for the distributees, as shown in her account, are part and parcel of the account which Bailey claims against W. P. and W. C. Munden, for advances made by him to them.   The register's report does not fully explain this, but the amount of the chancellor's decree satisfies us that such is the case.   Of course, if this be so, the younger Mundens are under only one liability for such advances ; and that liability is only to Bailey himself, unless it falls within a principle hereafter to be stated.

6.   In the first of the year 1871, Mrs. Munden's dower was allotted to her, and she went into possession of the lands so al-

lotted. The residue of the lands were rented out by the administrator, for that year and the next two. In stating the account of assets for distribution, the register included these rents in the general fund. In this, he erred. Mrs. Munden had no interest in these rents. They should have been adjudged and distributed equally between W. P. and W. C. Munden, whose land produced them. This was an error to the prejudice of the appellants, to the extent of one-third of those rents. This necessitates a re-statement of the account.

7–8. Bailey was appointed administrator in April, 1869. Within the two years ending in April, 1871, there was neither suit by nor suit against him as administrator. In that time, he paid as counsel fees five hundred and seventy-five dollars. There is exception to the allowance of this credit. When such is the case, the administrator must prove the services rendered, and their value; just as the attorney would be required to prove them, if he were suing the administrator for their recovery. If the account consist of more items than one, the various items should be set forth, with proof of their several values. It is an account for work and labor done; skilled labor, it is true; but still, only a *quantum meruit* should be recovered. The rules of evidence, of the right to recover, and of the measure of recovery, are the same as in every other case of claim of compensation for skilled labor performed,

The proof in this record does not come up to this standard. We are not able to determine what the services were worth, from any thing shown in the record. The particularized item shown in the testimony, relates to the claims on Tarry. There is proof of the value of the services rendered in the investigation of this claim, and in the preparation made for bringing suit. This meets the requirements of the law in establishing a claim against Bailey. Does it prove Bailey's right to charge it against the estate? Bailey was only a trustee, whose duty it was to give his skill and fidelity to the beneficiaries. Their legal interests, and their proper preservation, the law makes his supreme duty. To this end, he may employ counsel, and the reasonable expense of the retainer will become a proper charge against the trust fund in his hands. He may take a step farther, at the expense of the trust fund. The duties he performs are sometimes delicate ones, and he may incur reasonable expense in obtaining counsel, that he may himself pursue the proper line of duty. Professional aid, honestly and reasonably invoked for either of these objects, is not only permissible, it is praiseworthy.—*Pinckard v. Pinckard*, 24 Ala. 250; *Bendall v. Bendall, Ib.* 295; *Harris v. Parker*, 41 Ala. 604; *Henderson v. Simmons*, 33 Ala. 291; *Holman v. Sims*, 39 Ala. 709. So, we hold that an administrator may, as a rule, pay a

reasonable retainer to counsel, to advise and aid him in the trust, graduated by the value of the estate, and the character of questions likely to come up for solution. But, in the particular service we are discussing, the administrator did not follow the advice of his counsel, and no satisfactory reason is shown why he did not. The administrator is entitled to no credit for this service; and the account for counsel fees paid must be re-stated, on the principles declared above.

9. The register, in his report, charged the administrator with the amount of the Tarry claims; and the chancellor, on exceptions filed, rejected this charge. In this, we think the chancellor erred. The administrator, as we have shown, received his appointment in April, 1869. Tarry was a resident of the county, and had been for a great number of years. He was in the open, notorious possession of a large and valuable plantation, and had been for many years, claiming it as his own. He had, also, many mules and horses, and other plantation appliances, and was engaged in planting on a liberal scale. We hear of no other person asserting claim to any of this property. He was assessed for taxes on property valued at fourteen thousand dollars. There was no lien on this property, except an execution in the hands of the sheriff, in favor of Scott, for about $4,000. This execution was equally against him and Munden, Bailey's intestate, issued on a judgment rendered against them as sureties of one Wood. This execution debt was paid during the year 1869, partly by Tarry, and partly by Bailey as administrator. Four hundred dollars was paid with money furnished by Wood, the principal debtor, who also had owned some of the notes on Tarry, and had placed them in bailment, for Munden's indemnity. Tarry remained in possession of the property mentioned above, without molestation or suit against him, for about two years and nine months. Then two suits were brought against him, on debts aggregating over three thousand dollars; and in February, 1873, his lands were sold under execution, the fruit of those suits, and yielded a sum sufficient to pay the two judgments. The personal property was left unsold. Bailey never brought suit against Tarry, and no part of the Munden claim was ever collected. The excuse he offers is, that, on investigation, he found that Tarry owed over twenty thousand dollars, while his property was worth only fourteen thousand dollars. If this was a good excuse to Bailey, it was equally a reason why no other creditor should sue; and Tarry might have been left in perpetual possession and ownership of his property, with none of his debts paid. There were special reasons which should have stimulated Bailey's diligence in collecting these claims, all of which he disregarded. In the light of the evidence before us, we think,

[Munden v. Bailey.]

if he had sued within a reasonable time, he could have collected the Tarry claims, and that he is properly chargeable with them.

10. A question may arise, as to the extent of Bailey's liability, growing out of his failure to collect the Tarry notes Of the note and account due from Tarry to Munden, nothing further need be said, as the liability is for the whole amount, in any event. In regard to them, no equities are shown or claimed between Tarry and Munden, which can affect the measure of the latter's right of recovery. The notes turned over by Wood are in a different category. These were surrendered by Wood, as indemnity to Munden, his surety on the debt to Scott. Tarry was a co-surety with Munden, and was equally entitled to share in the benefits of the indemnity. *Steele v. Mealing*, 24 Ala. 285; *Owen v. McGehee*, 61 Ala. 440. The money, $400, furnished by Wood, was a payment on the debt, equally for the benefit of Munden and Tarry. So, the notes of Tarry, turned over by Wood, when paid by Tarry, or accounted for by Bailey, go to the equal exoneration of both Tarry and Munden's estate. Any balance of the liability left, after the application of these two funds, would be a common and equal burden on the two sureties. The record shows Tarry made part payment of the Scott judgment. The exact amount we are not able to ascertain. If, after crediting the Scott judgment with the money furnished by Wood, and with the amount of the notes on Tarry, turned over by him, the payments made by Tarry exceed one-half of the residue of the Scott judgment, then, to the extent of such excess, neither Tarry nor Bailey should be held to account; and such sum, or excess, must be allowed as a credit on the notes of Tarry turned over by Wood. It would follow from this, that if such excess is found, Bailey is entitled to the benefit of it. Equality of actual loss is the rule.

11. Advances of extra rations were made to the laborers in 1869 and in 1870. An account of these advances was kept in a book, but that book has been lost. The proof tends to show that the amount of these advances was collected by the administrator, by taking it out of the shares of the laborers in the cotton crops. The loss of the book renders it difficult—perhaps impossible—to prove the exact amount of these advances. It would seem, however, that with the aid of the testimony which Mrs. Munden and W. P. Munden could give, the true amount may be approximated. Whatever sum the administrator thus collected, is a proper charge against him. The register will ascertain the amount from the testimony given.

12. It is objected for appellants, that no allowance should be made in this suit for advances the administrator procured to be made by others to W. P. and W. C. Munden; notably,

those made by Mrs. Munden. In ordinary cases, this point might be well taken. But this case has peculiar features. Bailey, the administrator, at the request of the distributees, agreed to perform, and did perform for them, the functions of a guardian, without being appointed to that trust. This, to save them the expense of guardianships. True, the younger Mundens were minors when they preferred this request; but they do not seek to relieve themselves of this obligation on the score of infancy. On the contrary, in their answers they admit this request, and admit they agreed Bailey might be re-imbursed for such advances, when he came to make settlement. The language of their amended answer, which was filed October 29th, 1879 (after the younger Munden became twenty-one years of age), and allowed by the court April 27th, 1880, contains this language: "These defendants [W. P. and W. C. Munden] had the utmost confidence in the said complainant [Bailey], and relied with the utmost, implicit confidence upon him, to advise them in regard to their rights, property and interests, as was well known to him; and having learned from him that he could act for them, and provide for them as a guardian would do, and that he would do so and make no charge therefor, if these defendants would allow him credit upon their distributive shares for the same, upon his settlement of the estate, these defendants became anxious that he should, and they promised him that he should be allowed credit for all the advances he should so make for them respectively, upon their respective distributive shares in said estate, when he came to make settlement of said estate; and these defendants have been respectively willing, and are still respectively willing, to allow him credit upon the distributive share of each of them respectively in said estate, for the full amount of the advances he has justly so made to and for each of them respectively." This, as we understand it, is a full answer to the objection urged. They agreed, and still agree, to allow him credit against their distributive interests, for any and all advances he might make to them. It can make no difference that some of the advances were made through another. If made through Bailey's procurement, they were, in legal effect, made by him, and the Mundens were liable to him for them. Whether Bailey has paid, or ever will pay Mrs. Munden, for making such advances, can not affect his right to claim them against the younger Mundens.—*Harbin v. Bell,* 54 Ala. 389. And if, in taking the account, any balance shall be found in favor of Bailey, for excess of advances made to any of the distributees, there can be no objection to appointing and directing the payment of such balance to the person or persons through whom the ad-

vances were made, or the services rendered for the benefit of
the trust.

13. We find no error in the allowance of the counsel fee,
for defending the suit by W. P. Munden, as administrator of
his mother, against Bailey, as administrator of Needham Mun-
den, his father. This is a disbursement properly made by him
as administrator; and Bailey is entitled to a credit for it. If
the effect of this allowance be to swell Bailey's disbursements
above the assets, then he will be entitled to decrees over
against the distributees severally, for any excess of disburse-
ments the statement of the account may show he has made to
such distributee. But neither distributee is liable to refund,
except for his or her own excess of assets and advances received.
The liability will be several, not joint; and all this is the result
of the agreement and contract, under which Bailey became
*quasi*-guardian of the younger Mundens severally. But for
that agreement, the present bill is not so framed as to authorize
recovery out of the lands, which the administrator has allowed
to descend to the heirs.—*Alexander v. Fisher*, 18 Ala. 374.
And if there be a balance decreed to Bailey, under this sup-
posed state of facts, there can be no error in decreeing such
balance to be paid to the persons by whom the services were
rendered.

14. Even aside from that agreement, section 3748 of the
Code of 1876 would allow the attorneys in this case, on peti-
tion filed, to have the claim allowed out of the trust estate, to
the extent such trust estate was indebted to Bailey, the trustee,
but no farther.

15. A question may arise, as to the right of the attorneys
to recover directly of the trust estate, irrespective of the state
of the account between Bailey and the beneficiaries, on the
ground that the services were rendered for the benefit of the
trust estate, and the trustee, Bailey, is insolvent.—Code of
1876, § 3747. We do not feel called upon to decide this legal
question, as it can not arise in this suit. If the right exists, it
is an independent cause of action, and must be asserted by suit
at law in favor of the persons who rendered the services, against
the trust estate and the beneficiaries.—*Askew v. Myrick*, 54
Ala. 301. It can not be raised by petition, in such a suit as
this. It is not germane to the present bill, or either of the cross-
bills. Strangers to a chancery record, except as authorized by
statute, have no right to pray relief, unless they first become
parties on petition, setting up an interest in the subject-matter
involved in the suit. The subject of the present suit is Bailey's
account as administrator and *quasi*-guardian. In that, the at-
torneys have no pecuniary interest. The petition should not

have been entertained, and made the ground of relief as to services rendered in this suit.

16.    The attorney's services in the present suit can not be brought under the influence of section 3747 of the Code of 1876. They are not services rendered for the benefit of the trust estate, but are for the benefit of the trustee. They are not advances made by Bailey to the Mundens, and are therefore not brought within the influence of the agreement, under which Bailey took on himself the functions of guardian. Still, to some extent, he has the right to have the expense charged on the trust fund in his hands, or on any balance of assets not disbursed. A division of the burden should be so adjusted, as to leave on the trust estate that proportion which shall represent the unjust claims asserted by the distributees. The balance should rest on Bailey personally.—*Smyley v. Reese*, 53 Ala. 89.

Reversed and remanded.