# Clarke *v.* The State.

*Indictment for Murder.*

1. *Service of copy of indictment and special venire.*—When the record shows an order for the service of a copy of the indictment and of the special *venire* on the defendant (Code, § 4872), this court will presume compliance with the order, in the absence of objection in the court below founded on the want of it.

2. *Proof of venue.*—The sufficiency of the proof of venue can not be considered by this court, in the absence of a ruling by the primary court, and exception duly reserved to it.

3. *Killing one person by mistake for another.*—When one person is killed by mistake for another, the character of the offense is the same that it would have been if the fatal shot or blow had killed the person for whom it was intended.

4. *Threats by defendant against third person.*—As a general rule, a threat by the defendant to kill some other person than the deceased is not admissible as evidence against him; but, in a case of mistaken identity, evidence showing malice on the part of the defendant towards the person for whom the deceased is supposed to have been mistaken, or threats made by him against that person, is relevant and admissible; yet the jury should be instructed to give no weight or consideration to such evidence, unless they are satisfied as to the fact of such mistaken identity.

5. *Same; subsequent threats.*—In such case, the fact of mistaken identity being established, proof of threats made by the defendant towards the person for whom the deceased was mistaken, and of a difficulty between them, subsequent to the homicide, is competent and admissible against him, in connection with the precedent threats and other circumstances, in determining the intent and motive with which the fatal shot was fired.

6. *Flight, concealment, &c.*—Any conduct on the part of the defendant indicating a consciousness of guilt, such as flight, concealment, &c., being competent evidence against him as an implied admission; it is competent for the prosecution to prove that, when an officer went to the defendant's house to arrest him, and inquired for him, his wife asserted that he was not at home, when he was in fact in an adjoining room, and failed to discover himself; but the jury should be instructed to disregard the evidence, unless satisfied that the defendant heard and understood the purport of the conversation.

7. *Impeaching witness.*—The credibility of a witness can not be impeached by proof of the declarations of third persons, not made in his presence.

8. *Difficulty between defendant and third person or deceased.*—The prosecution having proved the fact of a difficulty between the defendant and a third person, for whom the deceased was supposed to have been mistaken at the time of the homicide, the defendant can not be allowed to prove the cause, merits, or details of that difficulty.

9. *Testimony of defendant as witness; cross-examination.*—When the defendant in a criminal case avails himself of the statutory privilege of testifying as a witness (Sess. Acts 1884-5, p. 139), he subjects himself

[Clarke v. The State.]

to the test of cross-examination as to any matter connected with the transaction, or pertinent to the issue, and impeachment by evidence assailing his general character, or by proof of contradictory statements on other occasions; but he can not be cross-examined, against his objection, as to his connection with, or commission of other offenses, or matters which would unduly prejudice him in the minds of the jury,—as by asking whether he did not " belong to the Jesse James gang."

FROM the Circuit Court of Jefferson.

Tried before the Hon. S. H. SPROTT.

The defendant in this case, Ralph Clarke, was indicted for the murder of James Leatherwood, by shooting him with a gun or pistol; and being tried on issue joined on the plea of not guilty, was found guilty of murder in the first degree, and sentenced to imprisonment in the penitentiary for life. The judgment-entry shows that the defendant was regularly arraigned on the 25th May, 1885 ; that the court then made an order appointing the 28th May for his trial, directing the summoning of a special *venire* for his trial, and service of a copy thereof, with a copy of the indictment, on the defendant one entire day before the day set for the trial; and that on the trial, on the day appointed, no objection was raised on account of any failure to comply with this order; but it does not affirmatively show a compliance with the order.

It was proved on the trial that the deceased was shot, and instantly killed, on the night of November 6th, 1884, while asleep in a bed in a room on the ground floor of a stable in the city of Birmingham ; and the evidence tended to show that the fatal shot was fired through a crack in the wall of the room, on the side next to the street. One Pool was sleeping in the bed with him at the time, next to the wall, and two other persons were sleeping on the floor of the room ; and a lamp was left burning near the head of the bed. The evidence against the defendant was entirely circumstantial, and the prosecution seems to have proceeded on the theory that the deceased was mistaken for one John Allen, though the fact is not stated. The prosecution was allowed to prove, against the objection of the defendant, that the deceased and said Allen resembled each other, in size, complexion, color of hair, and general appearance ; that the defendant had made threats against Allen, both before and after the homicide, declaring his intention to wait about the stable for Allen, and to kill him ; and exceptions were duly reserved by the defendant to the admission of each part of this evidence. The prosecution proved, also, the declarations of the defendant to his wife's sisters, the day after the killing, "that he had done a hanging crime;" and to the admission of this evidence the defendant excepted.

[Clarke v. The State.]

Joe Hanks, a witness for the prosecution, testified that, on the night of the homicide, he was passing in the street near the stable, heard a pistol shot fired, and saw the defendant walking away from the stable; that he hailed the person, calling the defendant by name, but received no reply. The defendant offered to prove, by one Dick Harris, that he was present at a conversation between said Allen and one Nash, his brother-in-law, after the killing, in which Allen said, "We must pay Joe Hanks more money, and if we can get him to swear, in the Circuit Court, the same facts he swore to on the petition for bail, we will convict Clarke, and get rid of him." The court excluded this evidence, on objection by the prosecution, and the defendant excepted.

Dave Brown, the officer by whom the defendant was arrested, was examined as a witness for the prosecution, and testified that, "when he went to the house, he found the defendant's wife standing in the door, and asked her about some tramps, and then where her husband was; that he spoke in his usual conversational tone; that she replied, 'He is out on the river;' that he then stepped in the door, and saw defendant in the far end of the adjoining room, close up in the corner, just opposite where his wife was. Defendant asked said witness, on cross-examination, 'Did defendant hear the answer made to you by his wife?' Witness answered, 'I don't know.' Defendant's counsel then asked, 'Was defendant in the adjoining room, where you found him, when his wife said that he was out on the river?' Witness answered, 'I can't say he was.' The defendant then moved the court to exclude from the jury the said answer made by his wife to said witness," and he excepted to the overruling of his motion.

The defendant testified as a witness for himself, and was asked on cross-examination, "Did you not belong to the Jesse James gang?" The defendant's counsel objected to this question; the court overruled the objection, and the defendant excepted."

Neither the dockets nor the transcript shows the name of the counsel who appeared in this court for the appellant; but there is a brief on file, without signature, which cites *Gooden v. The State*, 55 Ala. 178, and Clark's Man. Crim. Law, 442, and says that all the points raised by the bill of exceptions are insisted on.

THOS. N. McCLELLAN, Attorney-General, for the State, cited *Jackson v. The State*, 52 Ala. 305; *Diggs v. The State*, 49 Ala. 311; *Edward v. The State*, 49 Ala. 336; *Henderson v. The State*, 70 Ala. 29; *West v. The State*, 76 Ala. 98.

[Clarke v. The State.]

CLOPTON, J.—1. The record discloses an order, that a copy of the indictment and list of the jurors summoned be served on the defendant, but it is silent as to the service. In such case, on appeal, the service will be presumed to have been regular, in the absence of objection.—*Spicer v. The State*, 69 Ala. 159.

2. There was evidence showing that the offense was committed in Jefferson county. No instruction was given or requested in respect to its sufficiency. Without a decision by the Circuit Court, made the subject of an exception, and involving an inquiry into the sufficiency of the evidence, this court can not interfere.—*Hubbard v. The State*, 72 Ala. 164.

3. A consideration of the theory of the case, as contended and attempted to be proved by the prosecution, is necessary to a proper determination of the relevancy and competency of much of the evidence to which objection is made. There is an absence of proof showing any malice or ill-feeling on the part of defendant towards the deceased. It does not appear there had been any previous acquaintance between them. The theory of the State is, that the accused shot the deceased, mistaking him for Allen, whom he intended to kill. If this theory be found true by the jury, the defendant is guilty or innocent of the offense charged, the same as if the fatal shot had killed the person for whom it was designed.—*Tidwell v. The State*, 70 Ala. 33.

4. Previous threats of the defendant against the person slain are admissible, as evincing malice, a criminal intent, and a motive to commit the deed. While not by themselves convincing, they are properly submitted to the jury, in connection with the other circumstances of the case, on the question of guilt or innocence.—*Redd v. The State*, 68 Ala. 492; *Winslow v. The State*, 76 Ala. 42. The record discloses evidence, which, if believed, proves that the accused, at the time of the shooting, mistook the deceased for Allen. While the general rule is, that a threat to kill some person, other than the deceased, does not prove or tend to prove the offense charged; yet, in a case of mistaken identity, evidence evincing malice, criminal intent, and a motive to kill the person really intended, is admissible, on the same principles, and for the same reasons, as if such person had been killed under the same circumstances. The credibility and sufficiency of the evidence to establish mistaken identity, as to which we intimate no opinion, is a question exclusively for the jury; who should receive instructions to give no weight or consideration to the threats, unless satisfied that the defendant shot under the belief that the deceased was Allen.

[Clarke v. The State.]

5.   The Circuit Court did not err in admitting proof of
threats and a difficulty subsequent to the killing.   Such evi-
dence tends to show a continuance of the previous hostile feel-
ings, and a continuous intention to consummate his design as
to Allen.   They are circumstances, which may be properly con-
sidered by the jury, in connection with the preceding threats
and circumstances, in determining the intent and motive with
which he shot the deceased.—*McManus v. The State*, 36 Ala.
285.   It may be, that had proper objections been made, the
details of the difficulty should have been excluded ; but the
objection was only directed to the fact of a difficulty, and there
was no motion to exclude any part of 'the answer of the
witness.

6.   Any conduct of the accused, such as flight, concealment,
endeavor to avoid arrest, or other indications of a consciousness
of guilt, though weak and inconclusive, are admissible against
him.   The conversation between the wife of the defendant
and the officer who went to arrest him, if heard by him, and
his failure to discover himself, falls within this class of evi-
dence.   On account of the uncertainty of such evidence, it
should *prima facie* appear to the court that the accused heard
and understood the purport of the conversation, and knew that
the person inquiring for him was an officer ; and the jury
should be instructed to disregard it, unless satisfied of the pre-
liminary requisites to its admission.

7.  The credibility of a witness can not be impeached by the
mere declarations of persons not parties to the case, the witness
not being present.   The conversation between Allen and Nash,
relating to the payment of money to Hanks, was properly ex-
cluded.   If he was paid to testify as he did, his evidence is un-
worthy of credence ; but the subornation must be proved oth-
erwise than by hearsay evidence.

8.   The court erred in allowing proof of the cause of the
difficulty, between the defendant and Allen.   " The cause, mer-
its, or details of the quarrel, can never be material or perti-
nent—always tend to foist into the contention an immaterial
issue, and should not be received."—*Munden v. Bailey*, 70 Ala.
63 ;  *Garrett v. The State*, 76 Ala. 18.

9.   By statute, "on the trial of all indictments, complaints,
or other criminal proceedings, the person on trial shall, at his
own request, but not otherwise, be a competent witness ; and
his failure to make such request shall not create any presump-
tion against him, nor be the subject of comment by counsel."
Acts 1884–5, p. 139.   In *Brandon v. The People*, 42 N. Y. 265,
the defendant was on trial for grand larceny.   She was sworn
as a witness on her own behalf, under a statute similar to ours,
and on cross-examination was asked, if she had not been ar-

ested before for theft. The question was objected to, as an attack upon her character, which she had not herself put in issue. The court held the question was a proper one, and, no suggestion of privilege having been made, the objection was properly overruled. It is said : "She elected, however, to make herself a witness. She became and was a competent witness. For this purpose she left her position as a defendant, and, while upon the stand, was subject to the same rules, and called to submit to the same tests, which could by law be applied to other witnesses." It seems that the rule, as thus stated, has been followed in subsequent cases ; and in other States, under similar statutes, it has been declared, in general and unqualified terms, that a defendant, voluntarily becoming a witness, occupies, for the time being, such position, and subjects himself to the same tests, which by law could be applied to other witnesses.—*State v. Ober*, 13 Amer. Rep. 88 ; *Fletcher v. The State*, 19. Amer. Rep. 673 ; *State v. Wentworth*, 20 Amer. Rep. 687. Judge Cooley has expressed wholly adverse views. Speaking of the statutes which allow the accused to give evidence, he observes : " These statutes, however, can not be so construed as to authorize compulsory process against an accused, to compel him to disclose more than he chooses ; they do not so far change the old system as to establish an inquisitorial process for obtaining evidence ; they confer a privilege which the defendant may use at his option. If he does not choose to avail himself of it, unfavorable inferences are not to be drawn to his prejudice from that circumstance ; and if he does testify, he is at liberty to stop at any point he chooses, and it must be left to the jury to give a statement, which he declines to make a full one, such weight as, under the circumstances, they think it entitled to."—Cooley's Cons. Lim. 385. It may be, that the learned author's mind was specially directed to the statute of Michigan, which allowed the accused to make an unsworn statement, but subject to be cross-examined on such statement. If the observations apply to statutes which permit a defendant to become a witness, sworn and examined as such, we can not concur in a construction which authorizes the accused, after exercising his option, and while occupying the position of a witnesss, to disclose and to decline to disclose such facts as may, in his opinion, suit his convenience and interest, leaving his refusal to make full answers merely to be considered by the jury in weighing his evidence. Neither do we assent to the principle asserted in *Brandon v. People, supra*, to the effect that the accused, in becoming a witness, abandoned his position as a defendant for the time being, and is not to be regarded other than as a witness. The proper construction of the statute is that which best harmonizes the obligations and duties of

[Clarke v. The State.]

the accused as a witness with his rights as a defendant—which considers him as occupying, while testifying, the dual relation of witness and defendant.

The purpose of the statute is the protection of the innocent against punishment,—founded on the same humane policy which requires satisfaction of guilt beyond a reasonable doubt as requisite to conviction, and was not intended as a trap to catch the unwary. The design was to afford the accused an opportunity to put the entire case before the jury, who are to determine the weight and sufficiency of his evidence, on the basis of consistency and corroboration. When the defendant voluntarily becomes a witness, he assumes the duty and obligation to tell the truth, and the whole truth ; and the tests to which he subjects himself are, cross-examination relating to any matter connected with the transaction, or pertinent to the issue, and impeachment by assailing his general character, or by proof of contradictory statements on other occasions. As to any fact or circumstance relevant to the issue, or which sheds light upon the commission and character of the offense, though inculpatory, he waives his constitutional right to protection against being compelled to give evidence against himself. But the waiver extends no farther than to all such facts and circumstances as may tend to illustrate the particular offense charged.

We do not under-estimate the necessity, importance, and efficacy of a thorough, searching, and proper cross-examination, to elicit truth and expose falsehood, in the case of an unwilling, prejudiced, or perjured witness. This court, by past decisions, has been liberal in the latitude allowed to cross-examination, wherein much must necessarily be left to the discretion of the trial court, who sees the conduct, demeanor, and disposition of the witness, which can not be portrayed by word-painting. If it were conceded that, when a person is undergoing examination, who occupies only the relation of a witness, inquiries may be made into past transactions, accusations of crime, and arrests and imprisonment for alleged offenses, as affecting his credibility—to what extent such inquiries may go we do not decide; the question presents a different phase, when such inquiries are made of a defendant, though availing himself of the privilege of the statute, and at his own request becoming a witness. When there is only the relation of a witness, the defendant may not be affected, other than as the credibility of one of his witnesses may be impaired ; but, when the accused is himself the witness, not only may his credibility as a witness be affected, but his conviction may be obtained on his real or supposed commission of other and distinct offenses, when the evidence otherwise is in itself insufficient. To avoid

such injustice, and to secure to the defendant a fair and impartial trial in the sense guaranteed by the law, the waiver of the constitutional immunity from compulsory self-examination should not be extended beyond facts which may be testified to by other witnesses, or which may be relevant to the issue, or may tend to elucidate it. Within these limits, the fullest cross-examination should be allowed; but its range into inquiries respecting past transactions and offenses, separate and distinct, is prohibited by the constitutional inhibition.

In *People v. Brown*, 72 N. Y. 571, CHURCH, C. J., says: "I am of the opinion that the cross-examination of persons who are witnesses in their own behalf, when on trial for criminal offenses, should, in general, be limited to matters pertinent to the issue, or such as may be proved by other witnesses. I believe such a rule necessary to prevent a conviction for one offense by proof that the accused may have been guilty of others. Such a result can only be avoided, practically, by the observance of this rule." The case was distinguished from *Brandon v. People, supra*, in that the privilege was claimed, and was not in the Brandon case. It was further held, the rule that the privilege must be claimed by the witness, and that the objection can not be made by a party, does not apply; that the defendant, by taking the stand as a witness, is not deprived of his rights as a party, and his counsel may speak for him. In our opinion, a general objection, taken by counsel, through whom a defendant has a right to be heard, no specified ground of objection being stated, and without claiming the privilege in terms, is sufficient. A mere objection excludes an implied waiver of the constitutional protection. The statute was not designed to expose the past life of a defendant, his real or suspected crimes and immoralities, to inquisitorial inquiries. Otherwise, in the words of Judge COOLEY, "the statute must have set aside and overruled the constitutional maxim, which protects an accused party against being compelled to testify against himself, and the statutory privilege becomes a snare and a danger." And as CAMPBELL, J., says, in *People v. Thomas*, 9 Mich. 314: "But, perhaps, the worst evil would be the degradation of our criminal jurisprudence, by converting it into an inquisitory system, from which we have been thus far happily delivered."

The question propounded on cross-examination to the defendant, while being examined as a witness, is, "Did you not belong to the Jesse James gang?" It may be said to be matter of history, that such gang was composed of desperadoes and outlaws, with a career atrocious with robberies and murders. Suspicion of association therewith is condemnation in public estimation, degrades, criminates, and excludes public

[Harris v. The State.]

sympathy. The question related to a matter not pertinent to the issue, nor involved, directly or indirectly, in the offense for which the defendant was on trial, was only calculated to unduly prejudice him in the mind of the jury, and, on objection, should have been excluded.

We discover no error in the other rulings of the court.

Reversed and remanded.