## STATE v. LA MONT.

An information for rape, alleging that accused did ravish and carnally know, etc., was sufficient, under Rev. Pen. Code, § 325, defining rape as an act of sexual intercourse, etc.; the words "carnal knowledge" meaning sexual bodily connection between man and woman.

It was improper, on cross-examination of one accused of rape, to inquire as to numerous alleged instances of improper conduct toward other women of his household, which were not charged in the information, since an accused is required only to meet specific charges made against him, and the only result of such examination would be to prejudice him before the jury.

It is error to cross-examine an accused as to the commission of other offenses, though of the same kind with which he is charged.

The intent with which accused committed the act being immaterial, the evidence was not competent to show his intent.

The cross-examination was not permissible as bearing on accused's credibility as a witness, since, while the fact that accused had been convicted of another criminal offense involving moral turpitude might be shown to affect the credibility of his testimony, based, upon the theory that conviction presumes guilt, the fact that he had been charged with some other similar offense would have no tendency to discredit his testimony, as there could be no presumption of guilt arising therefrom.

The cross-examination was not competent to show accused's general bad character after he had called witnesses to testify to his gen-

eral good character, since, while a witness in a criminal case who has testified on direct examination as to general good or bad character may be cross-examined as to specific acts to test his opinion, the rule does not apply, where accused afterwards becomes a witness, to allow him to be cross-examined as to alleged specific acts of his life which have no connection with the offense for which he is on trial.

(Opinion filed, May 5, 1909.)

Appeal from Circuit Court, Clark County. Hon. GEORGE H. MARQUIS, Judge.

Boyd H. La Mont was convicted of rape, and appeals from the judgment and an order denying a new trial. Reversed, and new trial ordered.

*S. A. Keenan* and *Seward & McFarland,* for appellant. *S. W. Clark, Atty. Gen., C. D. Sterling, Asst. Atty. Gen.,* and *W. J. Jacobs, State's. Atty.,* for the State.

McCOY, J. This case comes before us on appeal from the circuit court of Clark county. The plaintiff in error was informed against, tried, and convicted for the crime of rape. Over 100 errors are assigned by counsel for plaintiff in error, but we will only refer to such errors as are hereinafter mentioned. The others, for most part, involve questions of law heretofore settled by this court, and which we deem unnecessary to consider in rendering this decision.

The plaintiff in error, whom we shall hereafter designate as the defendant, interposed a demurrer to the information upon the ground that the facts stated therein do not constitute a public offense. The information, omitting formal parts, is as follows: "That said Boyd La Mont, on or about the 2d day of May, 1907, at the township of Rosedale, in the county of Clark, and state of South Dakota, did in and upon one Lina La Mont, then and there being a female under the age of 16 years, and not the wife of the said Boyd La Mont, with force and violence, and by threats of immediate and great bodiy harm, accompanied by the apparent power of execution, and against her will and resistance, willfully and unlawfully and feloniously make an assault upon her, the said Lina La Mont, and with force and violence, and by threats of immediate and great bodily harm, accompanied by the apparent power of execution, and against her will and resistance, did then and there

willfully, unlawfully, and feloniously ravish and carnally know her, the said Lina Lamont, he, the said Boyd La Mont, being then and there a male person over the age of 14 years, and against the form of the statute," etc. The defendant contends that the allegation of the information that "defendant did then and there willfully, unlawfully, and feloniously ravish and carnally know her, the said Lina La Mont" is not equivalent to an allegation that the defendant did then and there willfully, unlawfully, and feloniously have sexual intercourse with her, the said Lina La Mont. In this contention we are of the opinion that defendant is in error. While the wording of the information is not in the language of the statute (section 325, Rev. Pen. Code), yet it seems to cover the statute, and be the same in equivalent words. The words "carnal knowledge" mean to have sexual bodily connection between man and woman. Commonwealth v. Squires, 97 Mass. 59; 6 Cyc. 351. On the trial of this case the only direct evidence as to the commission of the offense was given by the complaining witness, Lina La Mont, and by the defendant, Boyd La Mont. She testified that during the night of May 2, 1907, defendant came to her room and into her bed, and there had sexual intercourse with her, forcibly and against her will, and that on other occasions prior thereto, as far back as January, 1906, he had had intercourse with her under similar circumstances. All this testimony was squarely denied by defendant. The testimony of these two witnesses was of such character that the jury was bound to believe one and disbelieve the other. It was a question of veracity between those two.

On cross-examination of the defendant he was required over proper objections, to give the following testimony and answer the following questions: "Q. How many times between January, 1906, and May, 1907, did you visit your daughter Pearl at her home? A. Do not remember. Q. Now do you remember an occasion, Mr. La Mont, about the 5th of December, 1905, of being in the kitchen with your daughter Pearl, when your son Delmar come into the kitchen? A. I have no distinct recollection—it is likely I were in the kitchen. Q. Now to refresh your memory, Mr. La Mont, I will ask you whether or not upon that occasion your son Delmar did not come into the kitchen at a time when you had your hand

under your daughter Pearl's dress and on one of her limbs? A. No. Q. How long after December 5, 1905, did your daughter Pearl leave home. A. About a week previous to Christmas. Q. When was the next time she came home? A. About a month— she stayed at home about two hours—she came after more clothes. Q. Now to further refresh your memory, Mr. La Mont, did not you, on an occasion about the second week in January, 1906, in the nighttime, after your daughters had retired for bed, go into your daughter's room and get into bed with your daughter Myra, and tell her to keep still so as not to wake her other sister, and that you would not hurt her, and that it was not wrong? A. I did not. Q. Now, Mr. La Mont, is it not a fact that, at about the second week of January, 1906, after your daughters had retired for the night, you did not go up into your daughters' room, and get into bed with your daughter Myra, and have intercourse with her at that time? A. It is not a fact. Q. Do you remember an occasion about a day or two previous to November, 1906, when you and Mrs. Kidney were alone in the kitchen, and had some conversation with her late in the evening? A. I do not. Q. Do you remember, Mr. La Mont, of Mrs. Kidney saying at that time, among other things: 'If you do not leave me alone, I will holler?' " To the foregoing questions the defendant properly objected, on the ground of improper cross-examination, immateriality, and asked for the purpose of prejudicing the jury. These objections were overruled, and exception duly taken, and the said rulings are now assigned as error. In this contention we are of the opinion that defendant is right. These questions relate to alleged charges against defendant other than that with which he is charged in the information. The great weight of authority seems to be against permitting such cross-examination. An accused person is required to meet the specific charge made against him, and he is not called upon to defend himself against every act of his life. With rare exception it is not competent to inquire, on cross-examination of a defendant, as to other crimes than that with which he is charged. He cannot be required to be prepared to vindicate himself against any alleged crime which may be insinuated in the

form of cross-examination, and of which he has had no previous notice. The only purpose this cross-examination could serve was to prejudice the defendant before the jury. Com. v. Jackson, 132 Mass. 16; State v. Carson, 66 Me. 116; People v. Crapo, 76 N. Y. 288; People v. Brown, 72 N. Y. 571; Gifford v. People, 87 Ill. 210; Hayward v. People, 96 Ill. 492; Rice, Crim. Ev. 215. For a prosecuting officer, possibly well and favorably known to most of the jury, to say to a defendant, on trial on the charge of rape, upon his cross-examination: "Did you not on a stated occasion have intercourse with a daughter of yours? Did not your son, on a certain stated occasion, catch you with your hand under your daughter's dress, with your hand upon her limbs? Did not Mrs. K., a servant in your house, on a certain stated occasion say: 'If you do not leave me alone, I will holler?' "—would certainly have a great tendency to prejudice the jury against such a defendant. Any juror might naturally conclude that there must be something in these questions, or they would not have been asked by the prosecutor, even if the defendant did deny them. The jury would conclude naturally, under such circumstances, that defendant would deny the matters referred to in said questions even if they were true, and thus the jury would naturally consider matter wholly foreign to the issues in the case—matter that had not been proven either one way or the other in the case, but which had been injected into the case by way of insinuation on improper cross-examination, and which as a matter of fact, might be wholly without foundation, and which would naturally have a very damaging effect, by creating a prejudice against defendant that should not exist, and in a case where the vital facts are so closely contested.

In Clarke v. State, 78 Ala. 474, 56 Am. Rep. 45, it was held error to allow one on trial for murder to be asked on cross-examination: "Did you not belong to the Jesse James gang?" In People v. Brown, supra, it was held error to ask the defendant on cross-examination: "How many times have you been arrested before?" It is error to cross-examine an accused as to the commission of other offenses, although of the same kind with which he is charged. Com. v. Jackson, 132 Mass. 16; People v. Hamblin, 68 Cal.

101, 8 Pac. 687; Bailey v. State, 67 Miss. 333, 7 South. 348; Rice Crim. Ev. p. 215.

It is contended on the part of the state that the question of the conduct of the defendant with his other daughters other than complaining witness Lina La Mont, and with Mrs. Kidney, was material for the purpose of showing the intent of defendant; but we are of the opinion that there is no question of intent involved in the consideration of this case. No intent of any kind or character is alleged, or even mentioned, in the information. The question of intent was not in issue. This is one of that class of criminal causes where, if the defendant did what the complaining witness says he did, he is guilty, regardless of what he intended. It is simply a case of did he do, or attempt to do, the act with which he is charged in the information. Of course there is another class of criminal actions where the act charged might be susceptible of different intention, such as passing counterfeit money, and the like, and in such cases, in some jurisdictions, it is held proper to admit testimony of other like offenses charged to have been committed by the accused for the purpose of determining his intent. It is extremely doubtful if the state asked these questions under consideration in the case at bar for the purpose of ascertaining the intent of defendant, were such a question relevant. It appears from the record that the son Delmar and the daughter Myra, mentioned and referred to in this cross-examination, both testified as witnesses on the tial, yet neither of them was interrogated by the state in relation to any of these matters referred to in the cross-examination, and therefore it would naturally be inferred therefrom that this cross-examination was solely for the purpose of prejudicing the defendant before the jury, rather than to ascertain the truth. It is the sting of the insinuation, wholly without foundation so far as the record discloses, that constitutes the real gist of the error.

It could not be contended that this cross-examination in question was permissible as bearing upon the credibility of defendant as a witness. In some jurisdictions it is held that the fact that the defendant has been convicted of some other criminal offense involving moral turpitude may be shown by cross-examination, or

otherwise, where the defendant goes upon the witness stand as a witness in his own behalf, for the purpose of affecting the weight and credibility of his testimony, but we are of the opinion that this rule has rarely ever been extended to merely charges of prior misconduct. The fact that a defendant may have been previously arrested, or previously charged by some one with having committed some other similar offense, has no tendency to discredit his testimony. People v. Hamblin, 68 Cal. 101, 8 Pac. 687; People v. Brown, 72 N. Y. 571; Com. v. Jackson, 132 Mass. 16; Jones, Ev. 832, 834. In those jurisdictions where it is proper to inquire as to former convictions the rule seems to be based on the theory that the conviction presumes guilt; but, where a defendant is merely charged on cross-examination with some alleged criminal offense, there can be no presumption of guilt arising therefrom that could possibly affect his credit as a witness, but the presumption of innocence would still prevail and leave the question of his credibility unaffected. Jones, Ev. 834.

Neither is the position tenable that, because the defendant called other witnesses in his own behalf to testify to his general good character, he opened the way for cross-examination of himself as to the matters involved in the cross-examination under consideration. It is not competent to prove general good or bad character by specific acts. A witness who has testified on direct examination as to general good or bad character, may be cross-examined as to specific acts for the purpose of testing his opinion, but this rule could not apply to defendant himself when he afterwards went upon the witness stand so that he might be interrogated on cross-examination as to alleged specific acts of his life, and of which, possibly, he never heard, and which were independent, and have no connection with the charge for which he is on trial. Rice, Crim. Ev. pp. 604, 607.

The judgment of the lower court and the order denying a new trial are reversed, and a new trial is ordered.