# Smyth, *et al. v.* Fitzsimmons, *et al.*

*Bill of Review.*

97   451
99   459
97   451
186  377

1. *Bill of review lies to correct error apparent in decree.*—A Court of Chancery will, on a bill of review, reverse and revise its own decree for an erroneous application of the law to the facts found, whenever a court of appeals would do so for the same cause.

2. *Beneficial owner may convey property in any mode not expressly prohibited by the instrument creating the trust.*—If a married woman, the owner of an equitable separate estate in lands, the legal title to which is vested in her husband as trustee, for the purpose of enabling the husband to effect a loan, the mortgagee having knowledge of such intent, joins the husband in conveying the lands by deed on a recited consideration of $20,000, but in fact for no consideration, to a son who thereupon executed a mortgage on the land to secure such loan, she divests herself of the title to the land, and a decree on a bill filed by her, setting up these facts, cancelling the mortgage, is erroneous on its face, and revisable by bill of review.

[Smyth, et al. v. Fitzsimmons, et al.]

APPEAL from Montgomery Chancery Court.

Heard before Hon. JOHN A. FOSTER.

Bill of review filed by Frederick Smyth and others, against O. P. Fitzsimmons and others to revise and reverse a decree rendered in the Chancery Court of Montgomery, cancelling and annulling as a cloud on the title of Mary B. Fitzsimmons, a mortgage executed by her grantee to said Smyth to secure a loan of $4,000. The entire proceedings in the case sought to be reviewed, are set forth and the bill avers that an appeal from the said decree was taken, the transcript filed, and the cause docketed in the Supreme Court within twelve months from its rendition; but complainants, after the expiration of one year from the rendition of such decree, learned that said Mary B. Fitzsimmons died before said appeal was taken and that complainants have no remedy but by bill of review. The heirs at law of said Mary B. Fitzsimmons, are made defendants to the bill.

W. S. THORINGTON, and LESTER C. SMITH, for appellants, made the following points: That the bill will lie, see *Whiting v. Bank*, U. S. 13; Pet. 613; Story Eq. Pl. p. 371; *McDougald v. Dougherty*, 39 Ala. 426; *Griggs v. Gear*, 3 Gillman, 2; *Clark v. Killian*, 103 U. S. 766; 3 Brick. Dig. p. 402, Sec. 571; *Tankersley v. Pettis*, 61 Ala. 354; *McCall v. McCurdy*, 69 Ala. 65. As to the construction of the deed, Story Eq. Jur. § 1394; 2 Perry Trusts, § 669; 3 Pom. Eq. Jur. § 1104; 2 Brick. Dig. p. 86, §§ 211-240; 3 *Ib.* p. 548, § 85; *Hooks v. Brown*, 62 Ala. 258; *Burrus v. Dawson*, 66 Ala. 476; *Brown v. McGehee*, 46 Ala. 170; *Jacques v. M. & E. Church*, 17 John 548; 1 Lead. Cas. Eq. 748; *Seacroft v. Hadden*, 3 Gr. (N. J.) 547; *Woodson v. Perkins*, 5 Gratt. 346; 2 Story Eq. §§ 974, 1394, and other authorities.

TOMPKINS & TROY, for appellees, insisted that the finding of the court that appellants had knowledge of the purpose of the conveyance and mortgage, was conclusive.—*Stalworth v. Blum*, 50 Ala. 48; *P. & M. Bank v. Dundas*, 10 Ala. 661; *Bishop v. Wood*, 59 Ala. 253; *Ashford v. Patton*, 70 Ala. 479. That the wife had no power to mortgage the lands: *Turner v. Kelly*, 70 Ala. 85; 3 Pom. Eq. p. 28; 1 Bishop Mar. Wom. Sec. 866; *Keaton v. Scott*, 71 Am. Dec. 196. That there is no estoppel by the deed: 14 Am. & Eng. Ency. 637; *Leinkauf v. Munter*, 76 Ala. 194; 2 Cord. on Mar. Wo. Sec. 1284, and other cases.

STONE, C. J.—Mary B. Fitzsimmons, during her lifetime was the beneficial owner of a large body of land, lying in Russell county of this State. She was a married woman, and at the time of the occurrences after mentioned, O. P. Fitzsimmons, Sr., her husband, was her trustee. The title to the lands was vested in her husband—trustee—for her benefit. Its provisions are, "To have and to hold [to the trustee and his successors] in trust for the sole and separate use, benefit and behoof of [Mary B. Fitzsimmons] and her heirs free of all claims, liability or control of [her husband] the said Mary B. F. to have the right and privilege of disposing of the same by last will and testament as she shall deem proper, by and with the advice and consent of the [trustee] Provided always, and it is hereby declared to be a part of my intent and purpose by the execution of these presents that [Mary B. F.] and the said [trustee] shall and may by their joint deed of conveyance, sell, transfer and dispose of any portion of the trust property hereby conveyed, and invest the proceeds thereof in any other property, to be held by the said trustee upon the same trust, and for the same intent and purpose, as the said property which shall have been sold by them ; and that [Mary B. F.] and the said [trustee] shall and may by their joint deed of conveyance, dispose or transfer and convey any portion of the trust property hereby conveyed, in exchange for any other property, being real estate, stocks, funds, or securities of any sort or description whatever, according as in their judgment shall be most advisable—the said property so received in exchange to be held by the said trustee upon the same trust, and for the same intent and purpose as the property which shall have been disposed of in exchange for the same ; it being hereby expressly understood, declared and published that the purchaser of the said trust property, or the person receiving the same in exchange for the other property, shall in no case, instance, or manner be held responsible to look after the application of the purchase-money, or property so received in exchange by the said trustee."

The present suit is what is known as a bill of review.

The pleadings and documentary facts in the original case, which the present suit seeks to have reviewed, show the following transaction :

On May 8, 1883, O. P. Fitzsimmons, Sr., the trustee, and his wife, Mary B. Fitzsimmons, the beneficiary, executed a conveyance of all of said lands covered by the trust-deed, to E. Motte Fitzsimmons, their son. The conveyance is an ordinary deed of bargain and sale, on a recited consideration

[Smyth, et al. v. Fitzsimmons, et al.]

of twenty thousand dollars paid. This deed was duly executed, acknowledged and recorded, and on its face it purports to convey the lands to the grantee. On June 16, 1883, E. Motte Fitzsimmons, executed a mortgage, by which he conveyed all of said lands to Frederick Smyth, treasurer, to secure the payment of four thousand dollars due to the latter, the payment to be made at the Corbin Banking Company, City of New York. This mortgage was also duly executed, acknowledged and recorded.

In September, 1885, Mary B. Fitzsimmons filed her original bill against Frederick Smyth, and others for the purpose of removing and vacating the said deed to E. Motte Fitzsimmons, and the mortgage from him to Frederick Smyth, as clouds upon her title to said lands. She set forth her title as hereinabove shown, and averred that the conveyance by herself and trustee—her husband—to E. Motte Fitzsimmons, although it recites twenty thousand dollars as the consideration, was in fact upon no consideration whatever. That her husband O. P. Fitzsimmons, procured the deed and mortgage to be executed to enable him to borrow money on that security, which he succeeded in doing ; and that there was no other consideration for either conveyance. She averred further that all this was known to, and advised by the agent of the Loan Company, before the loan was perfected.

There was a demurrer to Mrs. Fitzsimmons' bill, which the Chancellor overruled. In April, 1889, the cause having been submitted for final decree, full relief was granted to complainant, and the mortgage ordered to be vacated and cancelled. The bill of review was filed in October, 1890, and a demurrer final was sustained to it in October, 1891. From that ruling the present appeal is prosecuted.

Was there merit in the bill of Mrs. Fitzsimmons?

In 2 Pom. Eq. 2nd. ed., § 1104, is this language: "Where the separate estate embraces land, the wife's power of disposition over her life estates therein has never been doubted, and her contracts to sell or to mortgage such life estates have always been specifically enforced against her. . . The general rule is now established, that the wife's power of disposition as a *feme sole* extends to estates in fee in lands, as fully as to life estates, or to personal property. . . As an incident of her general power of disposition, unless she is expressly restrained from anticipation, a married woman renders her separate property liable for a breach of trust by her trustees in which she has concurred, and for a breach of trust which she herself commits." This is said by the

author to be the English rule. Speaking of the rule established by the current of American decisions, the same author, in § 1105, says: "They regard the wife's *jus disponendi* as resulting from the fact of an equitable separate estate over which she is, partially at least, a *feme sole*, and not as resulting from the permissive provisions of the instrument creating such separate estate."

In 2 Sto. Eq. Ju., § 1394, it is said: "If the property is expressly given to a married woman, 'to her for her sole and separate use,' without saying, *for life;* and if she is further authorized to dispose of the same by will; in such a case the gift will be construed to confer on her the absolute property, and consequently she may dispose of it otherwise than by will; for the absolute property being given, the power becomes nugatory, and is construed to be nothing more than an anxious expression of the donor, that she may have an uncontrolled power of disposing of the property. So, if a limitation be to a married woman for life, for her sole and separate use, with a particular power of appointment of the property, and in default of any appointment the property is limited to her personal representatives, she will, or at least may, under such circumstances, be deemed the absolute owner; and as such, she will have an unlimited power to dispose of the property generally, without any exercise of the power of appointment."

These principles, so declared by these standard authors, are amply sustained by the numerous decisions to which they refer. See also *Hulme v. Tenant*, 1 Bro. C. C. 16; s. c., 1 Leading Cases in Eq. (481), and the elaborate note added thereto.—*Ib.* top 741 *et seq.*

It would seem that this question ought to be regarded as forever put to rest in Alabama. In *Burrus v. Dawson*, 66 Ala. 476, the conveyance was to a trustee for the benefit of a married woman during coverture. It contained the following clauses: "The said lands to be held by the said Hamlin L. Dudley, trustee, as the separate estate of the said Barbara Dawson [the beneficiary] with power to sell, mortgage, exchange, or otherwise dispose of the same, provided the said Barbara shall join with the said Hamlin in any sale, conveyance, exchange, or other disposition of said property, and by such joint action manifest her consent to the disposal of the same in writing. To have and to hold the said bargained premises, unto him the said Hamlin L. Dudley, trustee, his heirs and assigns, together with all and singular the rights, members and appurtenances thereof, the same in any manner belonging, to his and her proper use;

benefit and behoof, in fee simple." Pending the coverture, Mr. and Mrs. Dawson executed a promissory note, and a mortgage on the lands so conveyed to the separate use of Mrs. Dawson, to secure its payment. Dudley, the trustee, did not join either in the note or mortgage. A bill was filed to foreclose the mortgage, and the question was, whether or not they were a valid charge on the land. This question was decided in the affirmative by this court, in a very able and well supported opinion by BRICKELL, C. J. He said: "There is no more vexed question, embarrassed by distressing conflict of authority, than that which involves the power of a *feme covert* to charge or to dispose of her separate estate. Two different theories have been adopted, each supported by clear, cogent reasoning and high authority. The one asserts that, as to such estate, she is in a court of equity to be deemed a *feme sole*, and, as such, she may charge, or dispose of it in any proper mode, or by any legal contract, unless by the terms of the instrument creating the estate the power and capacity are excluded, or she is restrained and limited to some particular mode of contracting, or of alienation." We need not state the other theory. Proceeding, Judge Brickell said: "The first of these theories was adopted by this court at an early day, following the authority of (*Hulme v. Tenant*, 1 Bro. C. C. 16,) and (*Jacques v. M. E. Church*, 17 Johns. 548.) Since, it may be said, our decisions, with little if any variation, have adhered strictly to the doctrine, that as respects her separate estate, in a court of equity, a *feme covert* is to be regarded as a *feme sole*, and may dispose of her property without the consent or concurrence of her trustee; that it is liable for and subject to all debts, charges, incumbrances, or other engagements, which she expressly, or by implication charges thereon. (2 Brick. Dig., §§ 211 to 240.) The *jus disponendi*—the incident and consequence of ownership—accruing to her notwithstanding her coverture, unless it is excluded, or restrained and limited, it has followed that she may by her contract, or by a mortgage, charge or convey it in payment of, or as security for the debt of the husband."—*Bradford v. Greenway*, 17 Ala. 797; *McMillan v. Peacock*, 57 Ala. 127; *Demarast v. Wynkoop*, 3 Johns. Ch. 129. And, as a logical and legal consequence, it results; to borrow the language of PLATT, J., in *Jacques v. M. E. Church, supra*, that "the specification of any particular mode of averring her disposing power does not deprive her of any other mode of using that right, not expressly, or by necessary construction, negatived in the devise, or deed of settlement. Wherever the theory of an

[Smyth, et al. v. Fitzsimmons, et al.]

equitable separate estate prevails, which has been here adopted, the doctrine seems to be, that although a particular mode of charge or disposition is indicated in the instrument by which property is settled or devised for the separate use of a married woman, she may still adopt any other mode, unless there are words limiting her to that which the instrument prescribes."—1 Lead. Eq. Cases (4 Amer. Ed.), 748 top; *Seacroft v. Hadden,* 3 Green. Ch. 547–552; *Woodson v. Perkins,* 5 Grat. 346; *Keimer v. Weifert,* 46 Mo. 532." See also *Hooks v. Brown,* 62 Ala. 258; *Allen v. Terry,* 73 Ala. 123; 3 Brick. Dig. 548, § 85; *Baker v. Gregory,* 28 Ala. 544.

In the case of *Butler v. Gazzam,* 81 Ala. 491, the conveyance was by the husband to a trustee for the benefit of his wife during life, remainder to the heirs of the grantor. The conveyance directed that the property, which was real estate, was to be kept free from incumbrance. There was a power of sale "on the written request" of the life beneficiary, the proceeds to be re-invested for the purposes of the trust. The husband, maker of the trust, the wife, life beneficiary, and the trustee united in a mortgage to secure the payment of a debt due from the husband. It was held that the mortgage conveyed no greater interest than the life estate of the wife. That case is not opposed to those collated above, but on the main question—the authority of the beneficiary to mortgage her own interest—it follows and supports them.

It will be noted that by the terms of the conveyance to Mrs. Fitzsimmons, the absolute, beneficial ownership in the land was vested in her—an equitable fee simple. There is neither remainder nor reversion provided for, and any one claiming to succeed to her rights, save as a purchaser or devisee from her, must found his claim alone on inheritance from her. Neither is there any disabling, restraining, or restricting clause in the deed which declares and defines her title or interest.

The deed from Mrs. Fitzsimmons and her husband to E. Motte Fitzsimmons, although it recites a valuable consideration, was in fact upon no consideration whatever. Its sole purpose was to enable the latter to pledge and mortgage the land as security for the repayment of money proposed to be borrowed, and actually obtained by the husband and trustee, and, so far as the record informs us, borrowed for his own purposes. And these facts were fully known to the lender. Do these facts give to Mrs. Fitzsimmons the right to have the mortgage vacated and annulled, as a cloud on her title? We answer unhesitatingly no. Had she been a *feme sole* in fact, no one would dispute her right to execute

the deed she admits she executed, nor, as against herself, its complete efficacy to divest title out of her. Nor would she be heard to complain that her grantee had subsequently incumbered the land by mortgaging it to another. It would be simply a matter of which she would have left herself disrobed of all interest. Nor, being *sole* in fact, could it be questioned that a mortgage by her of her own land, made as a security upon which money was lent to another, would be equally binding on her, and upon her property so mortgaged. Under the authorities collated above, and the principles they declare, we hold that her land was as effectually bound by the mortgage as if she, being *sole* in fact, had executed it herself. Her bill, the rulings on which the present bill seeks to review, is void of equity, alike in its averments and in the proofs by which it was attempted to be sustained; and the chancellor erred in not refusing her relief, both on the demurrer and in the final decree.

Does the record before us present a case which entitles the complainant to relief on bill of review?

In *McDougald v. Dougherty*, 39 Ala. 409, 424, we quoted and approved the following language from *Evans v. Clement*, 14 Ill., 209: "It has now become well settled that the court will, on such a bill, reverse or revise its own decree for an erroneous application of the law to the facts found, whenever a court of appeals would do so for the same cause." We cited many authorities in support of this proposition, and among them *P. & M. Bank v. Dundas*, 10 Ala. 667. In the same case—*McDougald v. Dougherty*—428, we said, "We adopt the rule that on the question of error apparent that will justify a bill of review, it is permissible to consult all the facts which are apparent in the pleadings, in the process and its service, in orders, reports confirmed, and opinions and decrees of the chancellor." In *Griggs v. Gear*, 3 Gilman 2, the court said, "A bill of review may be brought for error of law which is apparent upon the face of the decree itself. In such a case no question is raised as to the propriety of the determination of matters of fact, or the evidence upon which the decree is founded, but it is only on matters of law as arising upon the facts, which are to be taken as absolutely true, as stated in the decree, that any question can be raised. By decree, here must be understood, not only the final judgment of the court, but the pleadings also, the substance of which, according to the English practice, is recited in the decree. So that in passing upon the errors assigned in the bill of review, the court will look through the bill, answer, the facts as found and determined

[Bibb v. Snodgrass.]

in the original cause, and into the adjudication made thereon." See also *Whiling v. Bank of United States*, 13 Pet. 6; *Clark v. Killian*, 103 U. S. 766; *Goodhue v. Church*, 1 Barb. Ch., 596; 2. Amer. Encyc. of Law, 264, *et seq*; Sto. Eq. Pl., 10th Ed., §§ 403, 407.

In the original suit and decree thereon, which this bill seeks to review, there was no disputed question of fact. Every question we need consider was raised on the face of the bill itself, and the demurrer thereto. That bill of Mrs. Fitzsimmons' was founded on the deed made for her benefit, the material parts of which are set out in the opening of this opinion. She set forth that deed as her title, and did not deny that she united with her husband in the deed made to E. Motte Fitzsimmons—did not deny the execution of the mortgage. She claimed relief alone on the fact that the deed she joined in the execution of was not made in the form and for the purpose specified in the conveyance which secured the property to her, but was made upon no consideration, and for a different purpose, namely: to enable her husband to borrow money, and that the lender knew these facts before and at the time he accepted the security and parted with his money. The pleadings clearly show this state of facts, and the chancellor, in giving reasons for his decree, shows that he based it alone on the fact that the deed and mortgage were not executed in accordance with the power of alienation, nor for the purpose expressed in the conveyance which secured the property to Mrs. Fitzsimmons, and that these facts were known to the lender while the negotiations were pending. We do not hesitate in declaring that this is a proper case for a bill of review, and that appellant is entitled to the relief he prays.

The decree of the chancellor is reversed, and a decree here rendered, overruling the demurrer to the bill of review. This ruling is based on the ground that there is error apparent on the face of the decree in the original cause.

Reversed and rendered.