# Taylor *et al. v.* Crook, Admr. *et al.*

*Bill for Review.*

1. *Authority of executors and administrators to bind estate.*—Without express power an executor or administrator can not, by any act or conduct, create a charge or liability against a decedent's estate; nor can he, by any payment, promise or admission, suspend or remove the bar of the statute of limitations so far as it affects a charge on land descended or devised.

2. *Liability of lands descended or devised to payment of debts; statute of limitations.*—Neither lands descended or devised nor their proceeds can be subjected to payment of the claim against a decedent's estate, unless within the period of the statute of limitations adversary proceedings are duly commenced and prosecuted against the personal representative or the devisees and there is a judicial subjection of the lands to the payment of the specified claims.

3. *Same; same; right of heirs or devisees.*—In order to subject lands descended or devised to the payment of claims against a decedent's estate or to charge the heirs or devisees with such claims, proceedings of an adversary character must be instituted, setting up the debt and seeking a decree for the

[Taylor *et al.* v. Crook, Admr. *et al.*]

sale of the lands for its payment; and such proceedings must be commenced within the period of the statute of limitations.

4. *Same; same; petition to ascertain amount of attorney's fee in a proceeding for the sale of land.*—Where an administrator *de bonis non* with the will annexed, who had been the attorney representing the executor in propounding and securing the probate of a will, upon his subsequent appointment as such administrator, had the administration of the estate removed into the chancery court, a petition filed in the chancery court by such administrator asking for a reference to the register to ascertain the value of his professional services in propounding and probating the will, is not a proceeding to have the lands sold for the payment of the fee ascertained to be due for the services rendered.

5. *Attorney's fee in probating will; when barred by the statute of limitations.*—Where an attorney who represented an executor in probating a will takes no steps to charge the lands of the testator's estate with the payment of his fee for professional services so rendered within six years from the date of the probate of the will, his right to so charge the lands is barred by the statute of limitations.

6. *Same; not a debt in the nature of costs; statute of limitations.* An attorney's fee for services rendered in probating a will is not a debt in the nature of costs against which the statute of limitations does not run; and an heir or devisee can plead the statute of limitations against such debt. Therefore, a proceeding to subject the lands of an estate to the payment of such fee must be commenced against the owner of the land within the period of the statute of limitations.

7. *Contracts of executor or trustee; liability of estate therefor; remedy of creditors.*—Contracts with trustees create only a personal liability on the part of the trustee, and, therefore, neither an executor nor other trustee, express or implied, can, in the absence of power specifically conferred on him, create any charge or impose any liability upon the trust estate by any contract or engagement he may make; and if he makes a contract which is beneficial to the estate, the person with whom he contracts has no equity to charge the estate, unless the trustee is insolvent, as shown by the exhaustion of legal remedies against him, and the trust estate is indebted to him.

8. *Same; same; attorney's fee for probating will.*—Where a person named as executor in a will employs an attorney to propound the will and to represent him in probating it, the attorney's fee for his professional services in securing the

[Taylor *et al.* v. Crook, Admr. *et al.*]

probate of the will is not a debt against the estate of the testator.

9. *Bill of review; what can be considered.*—While on a bill of review for error apparent, it is not permitted to look into the evidence to see whether or not it supports any conclusions of the court or facts shown by other portions of the record, it is permissible to consult all the facts which are apparent in the pleadings, in the process and in its service, in orders made, reports confirmed and opinions and decrees rendered; and upon such bill the question is whether upon such facts, so apparent, the decree is free from error and can be supported.

10. *Estoppel by judicial proceedings or pleadings; dismissal of bill.* When a party has defeated a judicial proceeding by alleging by pleading a particular state of facts, he can not be heard subsequently to deny or disprove these facts in defense of another proceeding; and, therefore, where an appeal from an interlocutory decree is dismissed on motion by the appellee upon the ground that the decree appealed from was not final, such party in a subsequent proceeding will not be allowed to set up that the decree formerly appealed from was final.

APPEAL from the Chancery Court of Talladega.

Heard before the Hon. J. R. DOWDELL.

The bill in this case was a bill of review, filed by the appellants, some of whom were devisees and others heirs at law of deceased devisees, under the last will and testament of Edward Gantt, deceased, to review, reverse and annul a decree of the chancery court rendered March 2, 1895, on the settlement of the accounts of H. P. Heflin as administrator of John T. Heflin, deceased, of the administration of said John T. Heflin, deceased, as administrator *de bonis non* of the estate of said Edward Gantt. In said decree sought to be reviewed and annulled, H. P. Heflin, as administrator of the estate of John T. Heflin, deceased, was allowed the sum of $13,608.24 as a fee claimed by said John T. Heflin against the estate of said Gantt for procuring the probate of the will of said Gantt. While the suit in which the decree sought to be reviewed and annulled was pending in the chancery court, John T. Heflin, who had been appointed administrator *de bonis*

[Taylor *et al.* v. Crook, Admr. *et al.*]

*non* with the will annexted of the estate of Edward Gantt, died; and the suit was reviewed against James Crook as administrator *de bonis non* with the will annexed of Edward Gantt, deceased, and H. P. Heflin, administrator of the estate of John T. Heflin, deceased. The allowance of the fee to H. P. Heflin as administrator of the estate of said John T. Heflin and the amount of such fee form the whole basis of the present contention, and is the foundation of the bill of review in the present case. This fee, and the amount thereof as allowed by the register, and confirmed by the court, was made up as follows: The sum of $4,000 and interest thereon from April 8th, 1872, to Sept. 17th, 1887, amounting in interest to $4,720, and aggregating $8,720; and interest on this last amount to September 22, 1895, the time of the settlement of said H. P. Heflin, aggregating $13,608.24.

The facts disclosed by the record and set forth in the bill of review are sufficiently stated in the opinion.

The respondents demurred to the bill upon many grounds, among which were the following: 1. For that there is no equity in said bill as there is no averment contained in the said bill which shows there is an error of law apparent upon the record in the decree rendered March 2, 1895, which is here sought to be reviewed, nor is there any averment of discovery of new testimony since the rendition of the said decree which would entitle the complainants to maintain a bill of review. 2. For that said bill avers that there was a transcript of the procedure of the said administration in the probate court ordered to be filed in chancery court, without setting forth the contents of the said transcript. 3. For that the complainants in said bill seek by said bill to review the allowance of four thousand dollars attorneys' fees to John T. Heflin for services rendered to said estate in probating the will of Edward Gantt, and other advice and services as attorney for said estate rendered prior to his appointment as administrator of said estate when it is shown by said bill of review that a decree was rendered on October 17th, 1883, allowing said attorney's fee and ordering a reference to ascertain the amount due for said attorney's fee, and that the same was ascertained by the register on

a reference held on to-wit, the 16th day of September, 1887, and that the same was confirmed by decree of the court on to-wit the 17th of September, 1887, more than three years before the filing of an application to be allowed to file this said bill of review. 4. For that said bill seeks to set aside the decree of March 2, 1895, which confirms the register's report allowing H. P. Heflin, administrator on the final settlement of the administration of John T. Heflin, a credit for attorney's fees heretofore allowed John T. Heflin by decree rendered Oct. 8th, 1883, ordering a reference to ascertain said fees; and shows also that a reference was held in accordance with said decree on September 16th, 1887, allowing said Heflin the sum of to-wit, $4,000 as attorney's fees with interest, making a total of $9,385, and that the same was confirmed by the court September 17th, 1887, and that these complainants in this bill of review had notice and were actually present in person or by attorneys, or their ancestors under whom they claim were present, and that said decree rendered September 17th, 1887, has never been set aside and is still a valid decree in said cause. 5. For that said bill of review seeks to set aside and annul that portion of the decree of March 2, 1895, allowing H. P. Heflin, administrator, on his final settlement of the administration of John T. Heflin in this said cause the sum of $9,385, with interest, from September 17th, 1887, the date of its allowance by this court, without setting forth any reason or cause why the said decree should be set aside, but said bill of review shows on its face that the said H. P. Heflin, administrator, should be allowed a credit for this amount shown to be due by the decree of this court to the said John T. Heflin. 6. For that said bill of review seeks to have reviewed rulings of the register and the court upon the objections to testimony of John T. Heflin taken in said cause on to-wit the 16th day of September, 1887, and upon the 30th day of September, 1886, and refiled on the reference held September 22, 1894. 7. For that it is not shown nor averred by said bill of review that said John T. Heflin was not allowed the sum of $9,385 as attorney's fees for services rendered

in said cause on to-wit the 17th day of September, 1887, but on the other hand the said bill of review shows that this sum was allowed by the court, and that it is a just credit on the final settlement of the said H. P. Heflin as administrator of John T. Heflin in this said cause. 8. For that it is shown by said bill of review that the attorney's fees of $4,000 allowed to John T. Heflin for services rendered in said cause were not allowed in the decree of March 2, 1895, here sought to be reviewed, but were heretofore allowed in the decree of October 8, 1883, and a reference was ordered to ascertain the amount of said fees, and that such reference was held September 16th, 1887, and the sum of $4,000, with interest, was allowed as a reasonable attorney's fee by the said register, and that the decree of this court was rendered September 17th, 1887, confirming the said report allowing the said attorney's fee, and that said decree was rendered more than three years before the filing of this said bill of review, or an application to file this said bill of review was made, and that the said decree has never been reversed nor set aside, and the said bill of review shows that said decree rendered on September 17th, 1887, is the last decree and the only decree allowing the said attorney's fees here sought to be reviewed. 9. For that complainants failed to point out in the said bill of review any error apparent on the record showing that the court erred in the decree of March 2, 1895, in ordering and decreeing "that the prayer of the petitioner, Louisa Taylor and others, filed March 25th, 1894, praying to vacate and annul the decree of this court filed October 5th, 1887, which decree confirmed the register's report filed September 16th. 1887, be and the said prayer of the said petitioners is hereby denied and refused," which portion of said decree of March 2. 1895. is prayed to be set aside and annulled in the prayer of the said bill of review. 10. For that complainants fail to point out in said bill of review any error apparent on the record showing that the court erred in the decree of March 2. 1895. in ordering and decreeing "that the exceptions of the defendants, Louisa V. Taylor *et. al.*. filed September 25th, 1894. to the register's report

filed September 22d, 1894, are hereby overruled," which portion of said decree of March 2d, 1895, is prayed to be set aside and annulled in the prayer of said bill of review. 11. For that complainants fail to point out in said bill of review any error apparent on the record showing that the court erred in the decree of March 2d, 1895, in ordering and decreeing "that the exceptions of the defendants, Mary Manson and Edward Tandall, Jr., filed September 25th, 1895, to the register's report filed September 22, 1894, are hereby overruled," which portion of said decree of March 2d, 1895, is prayed to be set aside and annulled in the prayer of said bill of review. 12. For that complainants fail to point out in said bill of review any error apparent on the record showing that the court erred in the decree of March 2d, 1895, in ordering and decreeing "that the report of the register stating the account of H. P. Heflin, administrator, etc., of John T. Heflin, in final settlement of said John T. Heflin's administration of the estate of Edward Gantt, deceased, said register's report having been filed September 22, 1895, is hereby in all things confirmed; and the account of said John T. Heflin, administrator of Edward Gantt, deceased, as filed March 24th, 1881, and stated by said H. P. Heflin, etc., is hereby passed and allowed; and that the said James Crook, administrator of the estate of Edward Gantt, deceased, will, if not at too great a sacrifice, dispose of enough property belonging to his testator's estate in his hands undisposed of and pay to the said H. P. Heflin as said administrator the sum so found due the estate of John T. Heflin, deceased, to-wit, the sum of $3,493.81," which portion of said decree of March 2, 1895, is prayed to be set aside and annulled in the prayer of the said bill of review. 13. For that said bill of review fails to point out any error of record in overruling of complainant's objections to the account of H. P. Heflin, administrator of final settlement of John T. Heflin's account as administrator of the estate of Edward Gantt, of $9,385, with interest from September 17, 1887, and the overruling of the objections to the register's report allowing the said claim. 14. For that the

said averment in said bill that the register held the decree of September 17th, 1887, to be a final adjudication of the question of fees upon the reference held September 22d, 1894, is a mere conclusion of the pleader, and there is no fact set forth in the said report or in any portion of the record unholding said averment.    15.   For that in said bill complainants seek to review the overruling of objections to the testimony taken before the register on reference September 22, 1895, which can not be raised by a bill of review.    16.   For that said bill of review prays that the allowance of attorney's fees of H. P. Heflin for certain services rendered by him to the estate to be reviewed, set aside and annulled and shows on its face that the application to file said bill of review was not made within three years after the rendition of the decree allowing the said fee, and it is not shown that the complainants at the time of the rendition of the said decree were infants, married women or persons of unsound mind.    17.   For that it is sought in said bill of review to have a portion of the decree rendered March 2, 1895, set aside and annulled without praying that the whole of said decree be set aside.    18.   For that said bill of review shows on its face that the decree of March 2, 1895, is without error on which these complainants can sustain their said bill of review.

Upon the submission of the cause upon the demurrers to the bill, the chancellor rendered a decree sustaining the grounds of demurrer above set out. From this decree complainants appeal, and assign the rendition thereof as error.

WHITSON & GRAHAM, for appellants.—As to what can be considered by the court on a bill of review, the rule in Alabama is thus declared: "It has now become well settled that the court will, on such a bill, reverse or revise its own decree for an erroneous application of the law to *the facts found, whenever a court of appeals would do so for the same cause.*"—*Smyth v. Fitzsimmons,* 97 Ala. 458; *McDougald v. Dougherty,* 39 Ala. 424; *P. & M. Bank v. Dundas,* 10 Ala. 667; *Evans v. Clement,* 14 Ill. 209.   This rule is approved and reaffirmed in *Smyth v.*

[Taylor *et al.* v. Crook, Admr. *et al.*]

*Fitzsimmons*, 97 Ala. 458, *supra; Banks v. Long*, 97 Ala. 319; *Dexter v. Arnold*, 5 Mason, 316; *Ashford v. Patton*, 70 Ala. 479.

"Facts established by admissions in the pleadings or shown to exist in the proceedings in the cause, are as clearly part of the record within the American rule as if they were recited in the decree."—*McDougald v. Dougherty*, 39 Ala. 424; *Hooper v. Hardie*, 80 Ala. 114.

Whenever, *by any proceeding*, lands of an estate descended or devised, are sought to be charged with the payment of the debts of the estate, the heirs or devisee can make any defense against such claim as their testator or intestate could make if living, or which would be available to the personal representative in an action at law against him.—*Scott v. Ware*, 64 Ala. 183; *Bond v. Smith*, 2 Ala. 660; *Steel et al. v. Steel, admr.*, 64 Ala. 439; *Teague v. Corbett*, 57 Ala. 543; *Trimble v. Farris*, 78 Ala. 266.

"Whatever would defeat or bar the debt as a valid, subsisting legal demand against the testator or intestate if he was living and defending will bar and defeat it when it is sought to charge the inheritance of the heir or the estate of the devisee."—*Scott v. Ware*, 64 Ala. 183; *supra; Carey v. Simmons*, 87 Ala. 529; *Warren v. Hearne*, 82 Ala. 554.

Money arising from the sale of real estate as to all questions of charge or liability is regarded as a substitute for the land; and the heirs or the devisees have the same right to assert their defense and any defense against any claim to which such money is applied or is sought to be applied in payment by the executor or administrator, that their ancestor had or the administrator would have.—*Teague v. Corbett*, 57 Ala. 543; *Chaney v. Chaney*, 38 Ala. 35; *Williamson v. Mason*, 23 Ala. 488; *McDonald v. Carnes*, 90 Ala. 147.

There is no express power under Gantt's will conferred upon his executors to impose a charge or liability on his estate. In 1872, when Judge Heflin's claim accrued, "A trustee in the absence of an express power in the trust, could not by his contracts or engagements impose a lia-

bility on the trust estate." "The persons he had employed had no equity to charge the trust estate; their demands were purely legal, chargeable only on the trustee." "If they contracted for necessary matters relative to the execution of their trusts, they incurred personal liabilities only; and upon such contracts, suits against them in their representative capacity can not be maintained."—3 Brickell's Digest, 478, § 367; *Steel v. Steel,* 64 Ala. 498; *Jones v. Dawson,* 19 Ala. 676; *Blackshear v. Burk,* 74 Ala. 242; *Kirkman v. Benham,* 28 Ala. 501; *Askew v. Myrick,* 54 Ala. 31; *St. Joseph Academy v. St. Augustine,* 55 Ala. 496; Hill on Trustees, marginal, 567; *Dickinson v. Conniff,* 65 Ala. 583; *Sanford v. Howard,* 29 Ala. 684; *Chestnut v. Tyson,* 105 Ala. 159; *Vandevere v. Ware,* 65 Ala. 607; s. c. 69 Ala. 38; *Mayberry v. Grady,* 67 Ala. 162; *Vann v. Vann,* 71 Ala. 690; *Dailey, Admr. v. Dailey,* 66 Ala. 266; *Worrall v. Harford,* 8 Vesey, Jr., 4; *Taylor v. McCall,* 71 Ala. 53; *Pollard v. Cleaveland,* 43 Ala. 103.

It appears that Heflin was administrator of the estate for more than eighteen years, having in his hands all the while ample assets, and thus uniting in himself *the right to collect and the duty and power to pay for all this period:* the law conclusively presumes, that the debt, if any, that the estate owed him, has been paid and extinguished, and this presumption neither he nor his administrator is permitted, under the law, to rebut or overturn, by proving that in fact that he never retained the necessary amount.—*Miller v. Irby,* 63 Ala. 477; *Kimball v. Moody,* 27 Ala. 130; *Dickie v. Dickie,* 80 Ala. 57; *Trimball v. Farris,* 78 Ala. 260; *Beadle v. Steel,* 86 Ala. 414, 421.

It is settled in this State, it seems to us, beyond cavil, that is if decisions ever settle anything, that the statute of limitations will run against the administrator in respect to his individual claim against the estate. That, the fact that he cannot sue himself, does not prevent the running, nor remove the bar of the statute.—*Trimble v. Farriss,* 78 Ala. 260, 270; *Steel v. Steel,* 64 Ala. 457; *Teague v. Corbett,* 57 Ala. 543; *Carey v. Simmons,* 87 Ala. 529; *Warren v. Hearne,* 82 Ala. 554; *McDonald v.*

[Taylor *et al.* v. Crook, Admr. *et al.*]

*Carnes,* 90 Ala. 147; *Wells v. Brown,* 83 Ala. 161; *Chandler v. Wynn,* 85 Ala. 301; *Scott v. Ware,* 64 Ala. 184; *Harwood v. Harper,* 54 Ala. 659; *Pollard v. Sears,* 28 Ala. 484. The operation of the statute of limitations is never stayed for a longer period than six months from the grant of letters of administration.—*Lewis v. Ford,* 67 Ala. 143; *Prickett v. Hobdy,* 63 Ala. 609.

Judge Heflin's claim for his services as an attorney on the contest of the will, was an open account, and accrued when the will was finally admitted to probate. It is not averred that any specific amount was agreed to be paid.

There is no statute providing *that counsel fees incurred by the* administrator are costs of administration; on the contrary, the law is settled that the administrator can never obtain a credit for attorney's fees until he has paid them.—*Bates v. Vary,* 40 Ala. 441; *Henry v. Henry,* 103 Ala. 582.

There is no privity between the executor or administrator and the heir or devisee in respect to lands or the proceeds of the sale of lands; *and by no act on the part of the administrator can he prevent or remove the bar of the statute of limitations as to such assets,* as against the heir or devisee, neither by suffering a judgment, *nor by partial payments,* nor any other act.—*Grimball v. Mastin,* 77 Ala. 553; *Starke v. Wilson,* 65 Ala. 576, 580; *Chandler v. Wynn,* 85 Ala. 312; *Lee v. Downey,* 68 Ala. 98, 102.

An administrator can never obtain credit for an attorney's fee until he proves not only the correctness of the claim, but that he has paid it.—*Henry v. Henry,* 103 Ala. 597, and authorities there cited. Nor can he obtain credit for money arising from the sale of lands paid on such a claim, after it is barred, any more than he could on any other debt. There is no difference between a claim for legal services, "and any other claim for skilled labor performed." Notwithstanding counsel would have the court to believe that "there's a divinity doth hedge" "a fee."—*Bailey v. Mundin,* 70 Ala. 70.

[Taylor *et al.* v. Crook, Admr. *et al.*]

KNOX, BOWIE & DIXON, *contra*.—Where an executor has *bona fide* employed counsel for probating a will and the will has been probated, the estate would be liable for the counsel fees rendered in that behalf; and where the executor employs counsel for this purpose, or for any other *bona fide* purpose in the administration of the estate and dies or resigns without having obtained credit therefor and without being in default, his successor in the administration may pay the same and obtain credit therefor on his final settlement; and furthermore, if the estate is insolvent this would be a preferred claim, standing next in order to the funeral expenses alone. In other words, the second administration seems to be considered a mere continuation of the first, and any liability for services rendered by an attorney to the first administrator, if that administrator did not obtain credit therefor, could be paid by the succeeding administrator, who would thereupon be entitled to a credit upon his settlement, and if the estate was insolvent, to priority.—*Hearin v. Savage,* 16 Ala. 286; Schouler on Execu. etc., 260.

A most persistent assault was made in the argument for appellant, upon the case of *Coopwood v. Wallace,* 12 Ala. 790, as though this case stood alone in the reports and had been expressly overruled. In both particulars appellants' counsel is in error; and in addition to this, the right of Judge Heflin to have a credit on the final settlement of his account for the reasonable value of his services in probating the will, stands upon higher ground than the right asserted in the case of *Coopwood v. Wallace, supra.*

In the case of *Gerald v. Bunkley,* 17 Ala. 170, it is said: "It is the duty of an administrator or other trustee to defend the trust estate from all unjust demands made against it, and he should employ the proper and reasonable means to make the defense effectual. As this is the duty of a trustee it follows that the necessary and reasonable expenses incident to the litigation must be borne by the trust estate and not by the trustee in his individual capacity.—*Coopwood v. Wallace,* 12 Ala. 790; 15 Ala. 335; *Pinckard v. Pinckard,* 24 Ala. 250; *Bendall v. Bendall, Ib.* 295; *Harris v. Parker,* 41 Ala. 604; *Hen-*

*derson v. Simmons,* 33 Ala. 291; *Holman v. Simms,* 39 Ala. 709.

It will be seen from the foregoing authorities that our court has clearly and definitely established the soundness of the rule declared in *Coopwood v. Wallace;* a rule which, it seems to us, is consistent with common sense and natural justice.—*Munden v. Bailey,* 70 Ala. 70.

But the case at bar is distinguishable from that of *Coopwood v. Wallace,* and stands on higher ground. It is observed that Judge Heflin is not prosecuting a suit against the estate of Gantt for the purpose of collecting his fee, at all; but is simply seeking to obtain a credit for it upon the final settlement of his account, which, if it be a just claim, all the authorities hold he is clearly entitled to under the doctrine of retainer. He stands in precisely the same position as if a stranger, John Smith, for instance, had been appointed administrator *de bonis non* instead of Judge Heflin; in which event, if John Smith had paid Judge Heflin his fee for services rendered in probating the will, he would clearly have been entitled to a credit therefor upon a final settlement of his administration; and if the right of John Smith in such a case, to a credit, can be sustained, it necessarily follows that Judge Heflin would have a right to pay himself and obtain credit. It is to be observed that it is not a case of Judge Heflin suing the administrator *de bonis non* voluntarily paying his demand and asking credit for it on his final settlement. The right to a credit for such a sum, when voluntarily paid, has been several times expressly admitted, and, so far as a diligent investigation of the authorities upon our part has revealed, has never been denied or doubted by the Supreme Court of this State. *O'Neill v. Donnell,* 9 Ala. 734; *Morris v. Murgatroyd,* 1 John's. Chan., 473; *Harris v. Martin,* 9 Ala. 895.

The case of *Henderson v. Simmons,* 33 Ala. 291, presents the identical proposition involved in the case at bar and is on all fours with the case of *Hearrin v. Savage, supra.*

By section 2176, Code of 1886, it will appear that on a final settlement of a personal representative, there being,

as in this case, assets unadministered, a decree over should be rendered in favor of the outgoing administrator against his successor for any amount shown to be due him, which, if the estate is solvent, must be paid by the successor in full, and, if insolvent, must be paid according to the statute of preferences. This statute was followed in the final settlement of Judge Heflin's administration. See *Miller v. Irby,* 63 Ala. 477; *Livingston v. Newkirk,* 3 Johns. Chan. 312; *Glenn v. Glenn,* 41 Ala. 571; *Trimble v. Farris,* 78 Ala. 260; *Moore v. Lesueur,* 33 Ala. 237.

As to the statute of limitations: The presumption of law is that Judge Heflin paid himself as soon as the assets came into his hands sufficient for that purpose, or as soon as, by the exercise of reasonable diligence, he could have obtained a sufficiency of assets to cancel the debt; and upon this question it is immaterial whether the assets were real or personal. As said in *Kimball v. Moody,* 27 Ala. 138, "Now the reason why the demand is considered extinguished is that the personal representative, who is to pay and to receive, has the means of making the payment; that is, when he receives assets which he may thus appropriate to his debt, he ought so to appropriate them, and the law considers them so appropriated, and the debt consequently extinguished."

The time when the debt is presumed to be paid is just as soon as, by the exercise of reasonable diligence, payment could have been coerced and, it being manifest that the payment could have been coerced before the claim was barred by the statute of limitations, it would be presumed to have been paid then, and the question, simply presented, is, does the statute of limitations apply against an administrator seeking credit for a just debt which he has paid before it became barred? In other words, how can the statute of limitations ever apply against a debt which is paid? It is wholly illogical to say that it is presumed to have been paid, and therefore in the eye of the law is paid as soon as assets sufficient for the purpose come into the hands of the personal representative; and yet when that personal representative asks credit for it on his settlement, the debt is so far kept

[Taylor *et al.* v. Crook, Admr. *et al.*]

alive after its payment as to entitle the heirs to plead the statute of limitations.

Another objection is equally fatal, it seems to us, to the plea of the statute of limitations. The fee for probating the will is a part of the costs and expenses of administration. There never was an administrator authorized to pay debts or costs, in this State, until Judge Heflin's appointment, and the cost was due to himself. As said in the case of *Hearrin v. Savage, supra,* if the estate be insolvent, on final settlement, the attorney's fees must be paid in full.

Moreover, we submit that where an administrator or executor is put to necessary expenses in the conduct of his administration, he must pay the same and obtain credit therefor out of the corpus of the trust estate, and the representative being himself personally liable for the debt, the statute of limitations is his privilege, and not that of the heirs.—7 Amer. & Eng. Ency. of Law, 409 ; 5 *Ib.* 251; *Compton v. Barnes,* 45 Amer. Dec. 115; *United States v. Eggleston,* 4 Sawyer, 199; *Linton's Succession,* 31 La. Ann. 130; *Thompson's Est.,* 1 Tuck. (N. Y. Surr.) 13; 2 Amer. & Eng. Ency. Law, 251, 252; *Gayle v. Johnson,* 72 Ala. 254; Schouler on Executors and Administrators, § 410; *McDougald v. Dougherty,* 39 Ala. 409; *Noble v. Hallonquist,* 53 Ala. 297; *Tankersly v. Pettis,* 61 Ala. 354; *Goldsby v. Goldsby,* 67 Ala. 560; *McCall v. McCurdy,* 69 Ala. 65; *Ashford v. Patton,* 79 Ala. 479; *Banks v. Long,* 79 Ala. 319; *Smith v. Fitzsimmons,* 97 Ala. 451.

It is also submitted that the decree of October 17th, 1883, fully determined the right to the fee and only left open the amount to be ascertained by the register. If so, it would have supported an appeal and is a bar to this bill.—*May v. Green,* 75 Ala. 162; *Stoudenmire v. Debardelaben,* 85 Ala. 85; *Foley v. Leva,* 101 Ala. 395; *Marshall v. McPhillips,* 79 Ala. 145; *Gary v. Jenkins,* 109 Ala. 476.

TYSON, J.—Counsel have practically argued but a single question. This question involves the propriety of

the chancellor in allowing H. P. Heflin a credit on the settlement of the administration of J. T. Heflin of $13,-608.24, as a fee to J. T. Heflin as attorney in probating the will of the deceased, Gantt. This bill of review was filed for the purpose of vacating that decree. This proceeding cannot involve an inquiry into the value of the services rendered by J. T. Heflin, for that would require an examination of the evidence upon which the chancellor bases his decree, which is not permissible in bills of review. The point is, whether or not the items as disclosed by the proceedings, which we are at liberty to consider, conceding them duly proved as to amount, were a legal charge against the estate of Edward Gantt at the time it was allowed.

The record sought to be reviewed, shows that Gantt died in 1867, leaving a will in which four persons were named executors, three of whom refused to propound the will for probate; but the fourth, Samuel Leeper, authorized J. T. Heflin, who was an attorney, to propound it and to represent him in the probate of it.

After a prolonged contest, the will was admitted to probate on the 18th day of April, 1872. The fee claimed is for services rendered in the contest and probate of the will which terminated on that date. Leeper died before the contest was decided, and J. T. Heflin, who performed the services as attorney, qualified as administrator with the will annexed, on the 13th day of May, 1872, and had the administration moved into the chancery court, on a bill filed in May, 1879, on which a decree was rendered on the 17th of February, 1881, assuming jurisdiction— after which time the administration of the estate proceeded in that court. By decree of the court made in May, 1883, the administrator was ordered to make a partial settlement, which was made in 1886, the register's report showing debits to the amount of $13,155.61, and credits to the amount of $8,595.14, leaving a balance in the hands of the administrator of $4,560.47. On the 16th of October, 1883, the administrator filed a petition in the cause, setting out his services as attorney in and about probating the will, and asking a reference to the register to

24c

[Taylor *et al.* v. Crook, Admr. *et al.*]

report on the value of such service. No parties were made to this petition, nor did it in any way seek a decree for the sale of the lands of the deceased testator for the payment of the alleged debts. The court entered a decree requiring the register to report on the claim, and the register made one report embracing the partial settlement above referred to and the matter of the fee. The report was set aside in August, 1887, and a new report ordered because the evidence as to the value of the attorney's fee was not reported. The same report was afterwards made with the testimony and was confirmed by the chancellor on October 5th, 1887. This report fixed the fee at $4,000, with interest from April, 1872, making a total of $8,720, but the item was not embraced in those of the debits or credits of the administrator in the partial settlement. On the hearing before the register, the parties appeared in opposition to the allowance of the claim. Exceptions were submitted against its allowance by the register to the chancellor, who overruled them and allowed the claim. From his rulings an appeal was prosecuted to this court, which was dismissed at the instance of H. P. Heflin, the administrator of J. T. Heflin, who had died pending the appeal in 1889, on the ground that the decree of the chancellor was not final. On the return of the case, the administration proceeded. One Crook qualified as administrator *de bonis non* of Gantt and revived the suit against H. P. Heflin as administrator of J. T. Heflin. H. P. Heflin, administrator of J. T. Heflin, filed his answer and accounts for a final settlement of his intestate's administration, in which he claimed as a credit to his intestate the payment of said fee allowed by the previous order of the court. The opposing parties appeared and contested the claim anew. The register held that he was concluded by the previous decree, and allowed the claim in full as a credit to H. P. Heflin, administrator, etc.—the allowance being with interest from April, 1872, compounded from the 16th of September, 1887, the date of the allowance of the claim by the previous report confirmed by the court October 5, 1887, amounting in the aggregate to the date of the accounting, 22d of September, 1894, to the sum of $14,635. Excep-

[Taylor *et al.* v. Crook, Admr. *et al.*]

tions were reserved to this report, but were overruled by the chancellor, who rendered a decree over, after exhausting all the funds in the hands of the original administrator, against Crook as administrator *de bonis non* for a large amount, requiring him to pay the same.

The two main questions presented are: First, was the claim a debt against the estate of Edward Gantt? Second, was it barred by the statute of limitations?

We will answer the last question first. It is clearly the law in this State that on the death of the ancestor, his estate takes a dual course as to title—the personalty vests in the executor or administrator, while the realty vests in the heir or devisee. As to the realty, the personal representative has only a power, to be exercised in the mode, manner and within the time prescribed by law. It is equally well settled that the heir or devisee cannot be deprived of his estate under this power without adversary proceedings commenced within the period of the statute of limitations. And it matters not whether the creditor is the personal representative or a third person. In either case, the *lis pendens* against the heir or person representing the heir must be commenced within the period of the statute. If the creditor is a third person, he must proceed against the administrator within the period, after which, he may charge the heir on failing to collect his judgment out of the representative or sureties on his bond. If the creditor is the administrator or executor, he must in like manner proceed to assert his claim against the holder of the title within the period of the statute.—*Scott v. Ware*, 65 Ala. 183; *Steele v. Steele*, 64 Ala. 439; *Teague v. Corbitt*, 57 Ala. 543; *Trimble v. Fariss*, 78 Ala. 266; *Cary v. Simmons*, 87 Ala. 529; *Warren v. Hearne*, 82 Ala. 554; *Chandler v. Wynne*, 85 Ala. 308; *Miller v. Irby*, 63 Ala. 484; *Bond v. Smith*, 2 Ala. 660; *Grimball v. Mastin*, 77 Ala. 559. And money arising from the sale of land is regarded as land as to these matters.—*McDonald v. Carnes*, 90 Ala. 149; *Chaney v. Chaney*, 38 Ala. 35; *Williamson v. Mason*, 23 Ala. 488; *Teague v. Corbitt, supra.*

In this case, J. T. Heflin's debt accrued, if a valid

claim, on the probate of the will in 1872. He took no
steps to charge the lands with the payment of the same
within the period of six years. His right, therefore,
was barred as to the lands. The record, the pleadings
and reports of the register show that all the assets in
his hands were lands or the proceeds of lands, and that
all of the present assets are of the same character. No
steps were taken in the administration of the estate by
J. T. Heflin until the bill was filed to remove the ad-
ministration into the chancery court. This, we have
shown, was on the 28th of May, 1878. But this was not
a proceeding against the land for the payment of the
debt. The next step was the petition to the chancellor
filed by the administrator to have his claim ascertained
on a reference for that purpose. This was on the 16th of
October, 1883, more than eleven years after its accrual.
This petition cannot be regarded as a proceeding to have
the lands sold for its payment. The debt might easily
be established and authorize an appropriation of the per-
sonal property to its payment, without effecting the
realty. The heirs or devisees must be charged by pro-
ceedings of an adversary character setting up the debt
and seeking a decree for a sale of the lands for its pay-
ment.—*Garnett v. Garnett,* 64 Ala. 263. The decree of
the chancellor allowing the claim is founded solely upon
the report of the register made upon this petition. If
it be said that the parties appeared and defended and
for this reason they cannot object to the form of the
proceeding, the answer is, that they set up the invalid-
ity of the claim which was overruled by both the regis-
ter and the chancellor. The error, therefore, is plain.
The ruling being that the heirs and devisees may have
their land sold to pay a debt due on a *quantum meruit,*
on proceedings commenced more than eleven years after
the accrual of the right of action upon it.

　　It is argued, however, that this debt is in the nature
of costs against which the statute of limitations does
not run, and that a succeeding administrator could pay
the same and claim credit therefor. The case of *Hen-
derson v. Simmons,* 33 Ala. 291, is cited to support this

contention. In that case, it is said any reasonable costs and expenses incurred by an executor in the honest endeavor to give effect to the will, is a proper charge on *the estate in his hands,* and that a successor in office may pay such expenses and charge the estate therewith. This statement was made particularly with reference to two items of credit claimed by the administratrix who had succeeded the executor, but neither item was an expense of administration so incurred and both were disallowed. One was an attorney's fee on the contest of the will, which the court said would have been allowed if the previous executor had employed the attorney. It must be obvious that this announcement of the law, so far as attorney's fees are concerned, was unnecessary to the decision of the point before the court. The attorneys in that case never having been employed by the executor, but by the settling administratrix before qualifying to protect her individual interest, no question was before the court as to the right of a trustee to impose a liability on the estate generally. Of course, any proper cost or expense incurred by a trustee is a charge in his favor on the estate *in his hands,* and he will never be deprived of the estate until his charges are paid, and no limitations would run against the items of charge while there was a live trust in existence in the hands of such trustee.

But an executor or administrator does not hold lands in trust; the title goes to the heir or devisee and the representative has only a power to have them subjected to debts of the estate of the testator or intestate, but not for costs of administration. The heir or devisee has the right to plead the statute of limitations against all debts of every character. The proceeding to subject lands to any liability, whether to creditors anterior to the administration, or to the administrator for costs of administration, must in all cases, be commenced against the owner of the land within the period of limitations. There must be, as we have said, an adversary proceeding within that time in due form, setting out the liability, making proper parties and claiming the relief desired. No such proceeding was instituted by

[Taylor *et al.* v. Crook, Admr. *et al.*]

Samuel Leeper; in fact, he never qualified as executor. His claim, therefore, against the land, supposing it one for which the land was liable, was barred. And if J. T. Heflin, as succeeding administrator, had in fact paid this item to a third person or to himself, it would be no legal credit to him or his successor as against the lands or proceeds of lands, unless within the period of the statute proceedings were duly commenced and prosecuted against the devisees to a judicial subjection of the lands to the specific claim. Expenses incurred by an administrator in a particular service, if chargeable against the lands, cannot as against the heir stand on a higher level than debts of the ancestor. If the representative is not content to look to the personal estate in his hands, he must proceed in due time against the land, to make it liable, so that proper defenses, if they exist, may be made. He cannot continue an administration for nearly thirty years and then ask an allowance, with interest for that long time, against the heir for expenses in probating the will, even if the lands were chargeable with such an expense, which is not the case unless the administration must be exercised over the lands for the payment of the debts of the ancestors created by him. *Beadle v. Steele*, 86 Ala. 421; *Sermon v. Black*, 79 Ala. 507; *Garrett v. Garrett*, *supra*. It is clear to our minds that the claim was barred by the statute of limitations.

The other point is equally clear. Neither Edward Gantt, nor any one authorized to contract for him, or the estate, dealt with J. T. Heflin. Samuel Leeper, at best, employed him to have the will probated. Leeper was, at most, a *quasi trustee* having a right to employ a lawyer to perform the service, and on paying him, to ask an allowance against the trust. The rule against allowing persons dealing with trustees to proceed directly against the trust, is founded on public policy. The public interest requires that trustees shall incur the liability with the risk of its being disallowed, for cause, when they come to settle their accounts. This secures their good faith and keeps a salutary check upon their liberality in dealing with trust estates. And, besides, to al-

low a double liability and right in every creditor, to proceed against either or both, as he may prefer, would produce the utmost confusion.—*Jones v. Dawson*, 19 Ala. 672; *Steele v. Steele*, 64 Ala. 439, *supra*. The rule, therefore, is wise which makes the trustee liable to the person he deals with. There is no hardship in this. The creditor knows exactly where he stands before he makes the venture and cannot complain at the result. The trustee knows his position before he incurs any liability. The case cannot be improved by the statute of 1873, now section 4183 of the Code, since that statute has no retroactive operation.—*Steele v. Steele, supra*. But if it had, it would not apply, since Leeper was not a trustee, executor or administrator, who are the only persons provided for, and if he was, the case is not within the categories of the original statute or of the Code as to form or substance.—*Munden v. Bailey*, 70 Ala. 74; *Askew v. Myrick*, 54 Ala. 30. The law on this subject is well expressed by the court in the cases of *Jones v. Dawson, Steele v. Steele*, and *Blackshear v. Burke*, 74 Ala. 243. We quote from the latter: "A trustee, express or implied, can not, in the absence of express power conferred upon him, by his contracts or engagements, impose a liability upon the trust estate. If he make a contract which is beneficial to the estate, the creditor, or person with whom he contracts, has no equity to charge the estate, unless he be insolvent, which must be shown by the exhaustion of legal remedies against him, and the estate is indebted to him. In that event, a court of equity may subrogate the creditor to the right of the trustee to charge the trust estate." This principle is sustained by many cases.—*Mulhall v. Williams*, 32 Ala. 489; *Askew v. Myrick*, 54 Ala. 30; *Mosely v. Norman*, 74 Ala. 423; *Munden v. Bailey*, 70 Ala. 74; *Daily v. Daily*, 66 Ala. 266; *Grimball v. Mastin*, 77 Ala. 559; *Taylor v. McCall*, 71 Ala. 53.

It may be said, and it is, in fact, argued with ability, that the case of *Coopwood v. Wallace*, 12 Ala. 790, is decisive of this point in this case. The case under consideration is not brought within the rule announced in that case, if that was the rule of this court, and if the statute

of limitations was out of the way, since there is no alle-
gation that Leeper was insolvent. But the case of *Coop-
wood v. Wallace* must be regarded as overruled by the
decisions of this court, notwithstanding the unqualified
overruling of it in *Jones v. Dawson* was mollified, if not
qualified, by the *dictum* of the court in *Mulhall v. Wil-
liams* and alluded to *arguendo* in *Askew v. Myrick,* as
an established exception to the general rule in favor of
the legal profession. There can be no doubt that the
case of *Coopwood v. Wallace* has been practically repu-
diated and completely overwhelmed by many subsequent
cases affirming the general rule, of which *Steele v.
Steele* may be taken as an example, and confirmed by
statute (Code, § 4183), providing for the particular
cases in which and the conditions upon which trust es-
tates may be liable in the first instance, to persons deal-
ing with trustees, which must be considered as exclud-
ing all other cases. There certainly exists no reason
why the claims of attorneys should stand on any higher
grounds than other services of like necessity to a trust
estate. It may be entirely true as stated in *Henderson
v. Simmons,* (33 Ala. 291) and *Hearin v. Savage* (16
Ala. 286), that proper costs and expenses of a previous
administration may be paid by a succeeding administra-
tor, and that he will be allowed a credit therefor in his
settlement. He, in such case, becomes as it were, an
assignee of the claim, and he must establish it as a
proper credit to the first administrator, or charge upon
the estate which he could have been compelled to pay as
representing the trust. And though it may be conceded
that if only personal property in possession of the ad-
ministrator was involved, the question of allowance
would come up on his final settlement, without preju-
dice from the statute of limitations, it would be entirely
different as to real estate. The proceeding to charge
land or the proceeds of land for any liability incurred
by the ancestor or by an administrator or executor,
must, as we have shown, be inaugurated in due form.
as to parties and declared purpose, within the limits of
the statute of limitations.

If J. T. Heflin, then, was subrogated to the rights of Leeper and if Leeper could have asserted his claim against the whole estate, including lands, and if Heflin would have all the rights of retainer, the case would not be bettered. This, because retainer by an executor or administrator cannot be exercised against land or its proceeds until the claim is established, after adversary proceedings commenced within the period of limitations. If J. T. Heflin had all these equities in support of a valid claim, there was no difficulty in his proceeding in equity, as soon as he qualified and without removing the general administration, against the devisees to establish the claim and for the sale of the land for its payment. Never having done so, his administrator cannot have a credit against the realty or a decree over for the debt, however meritorious it may have been. It appears, however, that this claim is for expenses of administration, which we have seen is not a liability against the land except where the lands have to be sold for the payment of debts. The conversion authorized by the will was for the purpose of division only. For all other purposes, the property remains real estate. *Allen v. Watts,* 98 Ala. 392; *Johnson v. Holifield,* 82 Ala. 127; *Moore v. Campbell,* 102 Ala. 449.

The only remaining question is whether on this bill of review, these errors are apparent. It is true, in this proceeding, that we are not permitted to look into the evidence to see whether or not it supports any conclusion of the court or fact shown by other portions of the record. We are bound to take the facts apparent upon the record as true, and the only question is, whether, the facts being true, the decree is free from error, that is, can be supported. What we may look at is expressed in one of the leading cases, *McDougald v. Dougherty,* 39 Ala. 428, where it is said: "We adopt the rule that * * * it is permissible to consult all the facts which are apparent in the pleadings, in the process and in its service, in orders, reports confirmed and opinions and decrees."—*Smyth v. Fitzsimmons,* 97 Ala. 458; *Bank v. Long,* 97 Ala. 319; *P. & M. Bank v. Dundas,* 10 Ala. 667.

[Taylor *et al.* v. Crook, Admr., *et al.*]

The original bill in the cause in which the decree was rendered, stated that the estate of the testator consisted almost entirely of lands, and the report of the register on which the decree was rendered contains an admission that all the assets were and are lands or their proceeds. The petitions and reports in reference to the allowance of the claim show that it was for services rendered by J. T. Heflin as an attorney for Samuel Leeper in procuring the probate of the will, which terminated in April, 1872. Every essential fact, therefore, to show the error of the decree in allowing H. P. Heflin, as administrator of J. T. Heflin, a credit and decree over against the proceeds of real estate on account of the services to Leeper is apparent in the record at which we must look. This decree is inconsistent with the law as applied to these facts and, therefore, cannot stand.

The decree cannot be supported on the idea that the confirmation of the first report of the register fixing the amount of the fee, was final. If it was final, it was no ascertainment of the liability of the land or its proceeds for its payment. There was no pleading alleging such liability or claiming such relief. The petition was filed on one day and on the next, the decree of reference was made, without parties being made or an opportunity to defend, requiring the register to report the amount of the fee. The report and decree confirming it did not fix or purport to fix a liability on the land. The fee did not even enter into the partial settlement as an item of credit. And if it had gone into such settlement, it would be open to the charge of error as a credit against the lands.

But independent of this, the appellants appealed to this court to reverse the decree of confirmation and the appellee, who now claims that it was a final decree, induced this court to dismiss the appeal because the decree was not final. He will not now be permitted to say that the decree was final.—*Smith v. Hodson,* 2 Smith's Lead. Cases, 138; *Jones v. McPhillips,* 82 Ala. 102; *Hill v. Huckabee,* 70 Ala. 183; *Caldwell v. Smith,* 77 Ala. 157; *McQueen's Appeal,* 49 Ala. 592; Bigelow on Es-

toppel (5th ed.), 556; 683; 7 Ency. Law (1st ed.), 19-20, 21, 22.

The bill is sufficient in law and the demurrer to it should have been overruled, and a decree will be here entered reversing the decree and overruling the demurrer.

Reversed and rendered.

HARALSON, J., not sitting.

DOWDELL, J., *dissenting.*